(text box: 1) NO. 5-03-0643

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

DEWAYNE HUBBERT, ELDEN L. CRAFT, )  Appeal from the 

CHRIS GROUT, and RHONDA BYINGTON, )  Circuit Court of

Individually and on Behalf of Others Similarly )  Madison County.

Situated, )

)

     Plaintiffs-Appellees, )

)

v. )  No. 02-L-786

)

DELL CORPORATION, )  Honorable

)  Phillip J. Kardis,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:

The defendant, Dell Corp., appeals the trial court's order denying its motion to compel arbitration and the court's related orders denying its motion to strike certain exhibits and an affidavit submitted by the plaintiffs, Dewayne Hubbert, Elden Craft, Chris Grout, and Rhonda Byington, in opposition to the defendant's motion to compel arbitration.  Because a ruling on a motion to compel arbitration is in the nature of injunctive relief, the trial court's orders are reviewable under Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)).  
LAS, Inc. v. Mini-Tankers, USA, Inc.
, 342 Ill. App. 3d 997, 1000 (2003).  On appeal, the defendant argues that the trial court erred in finding that its arbitration clause was not a part of the contract between the defendant and the plaintiffs and that the court erred in finding that if the arbitration clause was a part of the contract between the parties, then the arbitration clause was unenforceable because it was procedurally and substantively unconscionable.     BACKGROUND

In 2000 and 2001, the plaintiffs purchased computers online through the defendant's Web site.  Before purchasing their computers, each of the plaintiffs configured the model and type of computer he or she wished to purchase from the defendant's Web pages.  To make their purchases, each of the plaintiffs completed online forms on five of the defendant's Web pages.  On each of the five Web pages, the defendant's "Terms and Conditions of Sale" were accessible by clicking on a blue hyperlink.  The terms and conditions were also printed on the back of the plaintiffs' invoices, which were sent, along with separate documents containing the "Terms and Conditions of Sale," in the shipping boxes with the plaintiffs' computers, and the terms and conditions could be obtained by calling the defendant's toll-free number and requesting a copy.  On the last three forms the plaintiffs completed online, the following statement appeared: "All sales are subject to Dell's Term[s] and Conditions of Sale."  The defendant included in the boxes in which the computers were shipped its "total satisfaction" return policy, which provided that purchasers would receive a full refund or credit if the computers were returned within 30 days.  None of the plaintiffs returned his or her computers within 30 days.  

On June 3, 2002, the plaintiffs filed their complaint, both as individuals and on behalf of others similarly situated, 
i.e.
, a putative class action lawsuit, against the defendant.  In their complaint, the plaintiffs–three Illinois residents and one Missouri resident–alleged that they had purchased computers online from the defendant, whose principal place of business was in Texas; that the computers contained Pentium 4 microprocessors, which the defendant had asserted were the fastest, most powerful Intel Pentium processors available; that the Pentium 4 microprocessor was slower and less powerful and provided less performance than either a Pentium III or an AMD Athlon, but at a greater cost; and that the defendant's marketing of its Pentium 4 computers was false, misleading, and deceptive.  The plaintiffs' complaint includes three counts alleging that the defendant violated the Texas Deceptive Trade Practices–Consumer Protection Act (Tex. Bus. & Com. Code Ann. §17.41 
et seq.
 (Vernon 1994)) and one count alleging that the defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et seq.
 (West 2002)).  The plaintiffs allege that their damages are less than $75,000 per person.   

After the plaintiffs filed their complaint, the defendant made a demand for arbitration, but the plaintiffs did not respond.  On September 13, 2002, the defendant filed a motion to dismiss the plaintiffs' complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2002)) or, alternatively, to stay the proceedings and to compel arbitration.  In the defendant's motion, it alleged that as a part of the online contract, the plaintiffs agreed to a binding arbitration clause, which was contained in the defendant's "Terms and Conditions of Sale."  

The beginning of the "Terms and Conditions of Sale" stated:  

"PLEASE READ THIS DOCUMENT CAREFULLY!  IT CONTAINS VERY IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS, AS WELL AS LIMITATIONS AND EXCLUSIONS THAT MAY APPLY TO YOU.  THIS DOCUMENT CONTAINS A DISPUTE RESOLUTION CLAUSE.

This Agreement contains the terms and conditions that apply to purchases by Home, Home Office, and Small Business customers from the Dell entity named on the invoice ('
Dell
') that will be provided to you ('
Customer
') on orders for computer systems and/or related products sold in the United States.  You agree to be bound by and accept this agreement as applicable to your purchase of product(s) or service(s) from Dell.  By accepting delivery of the computer systems and/or other products described on that invoice, Customer agrees to be bound by and accepts these terms and conditions."  (Emphasis in original.)  

The "Terms and Conditions of Sale" also contained a choice-of-law provision, which stated that Texas law governed the sale of the computers and the agreement.    

The arbitration clause contained in the defendant's "Terms and Conditions of Sale" stated:

"12.  
Binding Arbitration.
  ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT[,] OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT[,] AND EQUITABLE CLAIMS) AGAINST DELL, its agents, employees, successors, assigns[,] or affiliates (collectively for purposes of this paragraph, '
Dell
'[),] arising from or relating to this Agreement, its interpretation, or the breach, termination[,] or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect (available via the Internet at 
http://www.arb-forum.com
 [], or via telephone at 1-800-474-2371).  The arbitration will be conducted before a single arbitrator and will be limited solely to the dispute or controversy between Customer and Dell.  The arbitration shall be held in a mutually agreed upon location in person, by telephone, or online.  Any award of the arbitrator(s) shall be final and binding on each of the parties[] and may be entered as a judgment in any court of competent jurisdiction.  Information may be obtained and claims may be filed at any office of the NAF or at P.O. Box 50191, Minneapolis, MN 55405."  (Emphasis in original.)

At a hearing, the plaintiffs agreed that a contract had been formed by their online purchase of the defendant's computers, but they denied that the binding arbitration clause in the "Terms and Conditions of Sale" was a part of the contract.  The defendant moved to strike certain exhibits and an affidavit filed by the plaintiffs in opposition to the defendant's motion to compel arbitration.  The court denied the defendant's motion to dismiss or, alternatively, to compel arbitration and the defendant's motions to strike.  The defendant filed this interlocutory appeal. 

ANALYSIS

Standard of Review

The standard of review for a decision on a motion to compel arbitration is whether there was a showing sufficient to sustain the trial court's order.  
Travis v. American Manufacturers Mutual Insurance Co.
, 335 Ill. App. 3d 1171, 1174 (2002).  If a trial court renders its decision without an evidentiary hearing and without findings on any factual issue, 
de novo
 review is appropriate.  
Travis
, 335 Ill. App. 3d at 1174.  Additionally, where a court rules on a motion to strike an affidavit or exhibits, evidentiary matters usually within a court's discretion, in conjunction with a ruling that is subject to 
de novo
 review on appeal, a court's ruling on the motion to strike is also subject to 
de novo
 review.  
Jackson v. Graham
, 323 Ill. App. 3d 766, 773 (2001).  In this case, the trial court did not hold an evidentiary hearing but decided the matter on the basis of the pleadings before it and the parties' arguments, so we review this case 
de novo
.  

Applicable Case Law

Before proceeding, we consider what law applies.  The parties agree that Texas law applies, but for different reasons: The plaintiffs argue that Texas law is applicable under a conflicts-of-law analysis, while the defendant argues that the choice-of-law provision in the "Terms and Conditions of Sale" controls.   

The court addressed a similar issue in 
Falbe v. Dell, Inc.
, No. 04-C-1425 (N.D. Ill. 2004) (memorandum opinion).  In 
Falbe
, the defendant, whose principal place of business was in Texas, argued that the choice-of-law provision of the "Terms and Conditions of Sale" controlled, while the plaintiff, an Illinois resident who had purchased a computer from the defendant via telephone, argued that Illinois law controlled.  
Falbe
, slip op. at 6.  In 
Falbe
, the court stated that under Illinois's choice-of-law rules, an express choice-of-law provision will be given effect if the provision does not contravene Illinois public policy and the state chosen bears a reasonable relationship to the parties or the transaction.  
Falbe
, slip op. at 7.  The 
Falbe
 court discerned no public policy obstacle to enforcing the choice-of-law provision and determined that the choice of state law bore a reasonable relationship to the parties and the transaction, 
i.e.
, the defendant's principal place of business was in Texas.  
Falbe
, slip op. at 7.  The 
Falbe
 court held that Texas law applied to determine whether a valid arbitration agreement existed.  
Falbe
, slip op. at 7.  

In the instant case, there is no discernable public policy obstacle to enforcing the choice-of-law provision, the parties agree that Texas law applies, Texas bears a reasonable relationship to the parties and the transaction because the defendant's principal place of business is in Texas, and the issues in this case involve basic contract law so there will be no substantial difference in the outcome of this case if Texas law is applied.  Therefore, we apply Texas law to the substantive issues.  See 
Potomac Leasing Co. v. Chuck's Pub, Inc.
, 156 Ill. App. 3d 755, 758-59 (1987) (a choice-of-law provision will be upheld if public policy is not violated and there is some relationship between the chosen forum and the parties or the transaction).  

Validity of Arbitration Agreement

The defendant argues that the trial court erred in finding that its arbitration clause, contained in the "Terms and Conditions of Sale," was not a part of the parties' contract.  The defendant argues that by making the "Terms and Conditions of Sale" available on its Web pages pursuant to a blue hyperlink, by stating on several of the Web pages completed by the plaintiffs that all sales are subject to the defendant's "Terms and Conditions of Sale," and by sending a copy of the "Terms and Conditions of Sale" in the boxes in which the computers were shipped, it sufficiently created a binding arbitration agreement with the plaintiffs.  The plaintiffs argue that simply making the "Terms and Conditions of Sale" available online was insufficient and that a clear manifestation of assent to the "Terms and Conditions of Sale" was needed to create a binding arbitration agreement.  The plaintiffs argue that the defendant should have displayed on its order-confirmation Web page an "I accept" box, on which the plaintiffs must click to manifest assent to the agreement before the purchase proceeded.  The plaintiffs also argue that the "Terms and Conditions of Sale" contained in the shipping boxes were "additional terms" and were governed by section 2.207 of the Texas Uniform Commercial Code (Tex. Bus. & Com. Code Ann. §2.207 (Vernon 1994)), which requires clear assent to make the additional terms binding on the plaintiffs.  The plaintiffs do not allege that they did not see or that they did not read the "Terms and Conditions of Sale."  

Federal and state laws strongly favor arbitration, and a presumption exists in favor of arbitration agreements.  9 U.S.C. §2 (2000); 
AutoNation USA Corp. v. Leroy
, 105 S.W.3d 190, 195 (Tex. App. 2003).  Courts are to resolve any doubts concerning an arbitration agreement in favor of arbitration.  
AutoNation USA Corp.
, 105 S.W.3d at 195.  A party cannot be required to arbitrate unless the party has agreed to do so, and the parties' arbitration agreement must be clear.  
Mohamed v. Auto Nation USA Corp.
, 89 S.W.3d 830, 835 (Tex. App. 2002).  If a valid arbitration agreement exists and the claims raised are within the scope of the agreement, a trial court has no discretion but to compel arbitration.  
AutoNation USA Corp.
, 105 S.W.3d at 195.  

The party seeking to compel arbitration has the burden of proving that an arbitration agreement exists and that the claims raised are within the agreement's scope.  
Cantella & Co. v. Goodwin
, 924 S.W.2d 943, 944 (Tex. 1996).  If an arbitration agreement is valid, the party opposing the agreement has the burden of defeating it.  
Cantella & Co.
, 924 S.W.2d at 944.

In the present case, the court found that the defendant's online terms and conditions had not been "adequately communicated" to the plaintiffs because the defendant did not provide a display text on the Web site that manifested a clear assent to the terms and conditions before the order could proceed, because the terms and conditions were not displayed on a Web page that the plaintiffs had completed in placing their orders, and because there was no language on the Web pages placing the plaintiffs on notice that they were performing an affirmative act that would bind them to submit their claims to arbitration.  The court held that the defendant's "Terms and Conditions of Sale," and, therefore, the arbitration clause, were not a part of the online sales contract. 

We find that the online contract included the "Terms and Conditions of Sale."  The blue hyperlink entitled "Terms and Conditions of Sale" appeared on numerous Web pages the plaintiffs completed in the ordering process.  The blue hyperlinks for the "Terms and Conditions of Sale" also appeared on the defendant's marketing Web pages, copies of which the plaintiffs attached to their complaint.  The blue hyperlinks on the defendant's Web pages, constituting the five-step process for ordering the computers, should be treated the same as a multipage written paper contract.  The blue hyperlink simply takes a person to another page of the contract, similar to turning the page of a written paper contract.  Although there is no conspicuousness requirement, the hyperlink's contrasting blue type makes it conspicuous.  Common sense dictates that because the plaintiffs were purchasing computers online, they were not novices when using computers.  A person using a computer quickly learns that more information is available by clicking on a blue hyperlink. 

Additionally, on three of the defendant's Web pages that the plaintiffs completed to make their purchases, the following statement appeared: "All sales are subject to Dell's Term[s] and Conditions of Sale."  This statement would place a reasonable person on notice that there were terms and conditions attached to the purchase and that it would be wise to find out what the terms and conditions were before making a purchase.  The statement that the sales were subject to the defendant's "Terms and Conditions of Sale," combined with making the "Terms and Conditions of Sale" accessible online by blue hyperlinks, was sufficient notice to the plaintiffs that purchasing the computers online would make the "Terms and Conditions of Sale" binding on them.  Because the "Terms and Conditions of Sale" were a part of the online contract and because the plaintiffs did not argue that their claims were not within the scope of the arbitration agreement, they were bound by the "Terms and Conditions of Sale," including the arbitration clause.  

Because we conclude that the "Terms and Conditions of Sale" were a part of the online contract formed at the time of the plaintiffs' purchase of the computers, we need not consider what effect the copies of the "Terms and Conditions of Sale" enclosed in the shipping boxes have on the contract.    

Motions to Strike

It appears that in finding that the arbitration clause was unconscionable, the trial court considered documents that were the subject of the defendant's motion to strike.  Therefore, before considering whether the arbitration clause was unconscionable, we consider whether the court properly denied the defendant's motion to strike.  

In its motion to strike, the defendant objected to seven of the plaintiffs' exhibits: a newspaper article from a March 2000 edition of the Washington Post; a transcript of a deposition of Edward C. Anderson, an employee of the National Arbitration Forum (NAF), taken in the case of 
Toppings v. Meritech Mortgage Services, Inc.
, 212 W. Va. 73, 569 S.E.2d 149 (2002) (
per curiam
); and five documents, purported to be drafted by persons at NAF, that may or may not have been disseminated to unknown persons. 

The Washington Post article stated that in cases arbitrated by NAF between First USA, a credit card company, and its credit card holders, the results favored First USA 99.6% of the time.  The article stated that First USA's cardholder agreement required mandatory arbitration and that NAF was the chosen arbitration firm.  The article suggested, based upon class action lawsuits filed, that NAF is biased in favor of First USA and similar credit card firms and retailers.  The Washington Post article was hearsay and was not admissible.  See 
McCall v. Devine
, 334 Ill. App. 3d 192, 203 (2002) (the contents of newspaper articles are hearsay and therefore inadmissible).  Therefore, the trial court erred in refusing to strike this exhibit.

The next exhibit to which the defendant objected was a transcript of the deposition of Anderson, an NAF employee.  There is no 
per se
 rule that a transcript of a deposition taken in one case cannot be used in another.  
Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp.
, 304 Ill. App. 3d 734, 741 (1999).  However, whether a deposition transcript can be admitted depends on whether the party against whose interest the deposition testimony is being used had notice of the deposition and an opportunity to cross-examine the deponent.  
Fremont Compensation Insurance Co.
, 304 Ill. App. 3d at 741.  Here, because there was no evidence that the defendant was a party to the 
Toppings
 case or that the defendant's attorneys had notice or an opportunity to cross-examine Anderson in this deposition, the court erred in refusing to strike the transcript of Anderson's deposition.  

The last five documents to which the defendant objected were three letters that NAF employees allegedly sent to persons who are not parties to this case and two of NAF's marketing documents.  One of the NAF marketing documents compared the features of NAF and the American Arbitration Association.  The second document highlighted features of NAF's code of procedure.  These documents were hearsay, no foundation was laid for the documents, and no exception to the hearsay rule was presented to allow for their admission.  See 
Evans & Associates, Inc. v. Dyer
, 246 Ill. App. 3d 231, 237-38 (1993) (letters were improperly admitted because they were hearsay, no foundation had been laid, and no exception to the hearsay rule was shown).  Accordingly, the trial court erred in refusing to strike these five documents.

In summary, the trial court erred in refusing to grant the defendant's motion to strike, and the trial court should not have considered any of these exhibits in making its decision. 

Arbitration Agreement Unconscionable

The defendant also argues that the trial court erred in finding that if the arbitration agreement was binding, it was unenforceable because it was procedurally and substantively unconscionable.  This finding assumed that the arbitration agreement was otherwise valid. 

The doctrine of unconscionability applies to arbitration agreements just as it applies to other contracts.  
AutoNation USA Corp.
, 105 S.W.3d at 198.  If an arbitration agreement is unconscionable, it is unenforceable.  
In re Turner Brothers Trucking Co.
, 8 S.W.3d 370, 376 (Tex. App. 1999).  The test of unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract."  
AutoNation USA Corp.
, 105 S.W.3d at 198.  The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise.  
AutoNation USA Corp.
, 105 S.W.3d at 198.  Unconscionability is a question of law (
Pony Express Courier Corp. v. Morris
, 921 S.W.2d 817, 820 (Tex. App. 1996)) and is determined on a case-by-case basis (
In re H.E. Butt Grocery Co.
, 17 S.W.3d 360, 371 (Tex. App. 2000)).  

There are two aspects to unconscionability.  Procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision.  
AutoNation USA Corp.
, 105 S.W.3d at 198.  Substantive unconscionability refers to the fairness of the arbitration provision itself.  
AutoNation USA Corp.
, 105 S.W.3d at 198.  The party asserting unconscionability has the burden of proving both procedural and substantive unconscionability.  
In re Turner Brothers Trucking Co.
, 8 S.W.3d at 376-77.    

Here, the trial court found that the arbitration agreement was procedurally unconscionable for the following reasons: 

"The manner in which the existence of the arbitration provision was minimized as to not to [
sic
] attract the attention of the customer, as well as the other aspects of the sale relating to the lack of disclosure of the terms and conditions as previously discussed, make [
sic
] it fundamentally unfair.  This is particularly apparent when one considers the adhesive nature of sales between Dell and the consumer and the significance of the right of a party to present his claims in court[.]"

When it ruled that the arbitration clause was procedurally unconscionable, the trial court held that the arbitration agreement should have been conspicuous.  "Texas law invalidates only certain types of clauses if they are inconspicuous" (
AutoNation USA Corp.
, 105 S.W.3d at 199), and an arbitration agreement is not one of those.  Further, the Uniform Commercial Code, as adopted in Texas, provides that a term or clause is conspicuous when it is written so that a reasonable person against whom it is to operate ought to have noticed it.  Tex. Bus. & Com. Code Ann. §1.201(10) (Vernon 1994); 
Arthur's Garage, Inc. v. Racal-Chubb Security Systems, Inc.
, 997 S.W.2d 803, 814 (Tex. App. 1999).  A term or clause is conspicuous if it is written in capital letters or if it is written in larger or other contrasting type or color print.  Tex. Bus. & Com. Code Ann. §1.201(10) (Vernon 1994); 
Arthur's Garage, Inc.
, 997 S.W.2d at 814.  

In the instant case, the hyperlinks for the "Terms and Conditions of Sale" were in a contrasting blue color.  On the linked Web page for the "Terms and Conditions of Sale," the arbitration clause was partially in capital letters, thereby drawing attention to the clause.  Also, the beginning of the "Terms and Conditions of Sale" stated in bold, capital letters that the terms and conditions contained a dispute-resolution clause.  Thus, although we do not hold that an arbitration clause must be conspicuous, in this case the "Terms and Conditions of Sale" and the arbitration clause were conspicuous.  

The court also determined that the arbitration clause was procedurally unconscionable because it was a contract of adhesion.  A contract of adhesion exists where one party has absolutely no bargaining power or ability to change the contract terms.  
In re H.E. Butt Grocery Co.
, 17 S.W.3d at 370-71.  However, a contract of adhesion is not automatically unconscionable.  
In re H.E. Butt Grocery Co.
, 17 S.W.3d at 371.  Because the court engaged in no other analysis and simply found that the defendant's arbitration clause was unconscionable because it was a contract of adhesion, the court erred in finding that the arbitration agreement was procedurally unconscionable.    

The court also determined that the arbitration agreement was substantively unconscionable because the agreement provided that "the exclusive arbitrator of any dispute is one which compensates its arbitrators in a way that has been found to 'impinge on neutrality and fundamental fairness.'  
Toppings v. Meritech Mortgage Services, Inc.
, 569 S.E.2d 149 (W. Va. 2002)."  The court also found that the plaintiffs' action could only proceed as a class action, that the arbitration clause prohibited arbitration on a class-wide basis, and that enforcement of the arbitration clause would substantively deny the plaintiffs and the class members any chance of recovery.  The trial court concluded:

"While parties are free to agree to submit their disputes to arbitration, Dell is seeking to impose its unilateral choice of the use of arbitration as well as its selection of the actual arbitrator on its customers.  The record suggests that the result of this arrangement is an arbitration process which, among other things, results in favorable results for defendants on an inordinate basis, limits remedies available to the customer, requires the customer to potentially incur greater costs than the amount he can recover, and exposes the customer to the possibility of paying the fees and costs of Dell.  The Court finds the arbitration provision is both procedurally and substantively unconscionable."

The plaintiffs argue that the defendant's arbitration agreement is substantively unconscionable because the arbitration agreement deprives them of their statutory rights and remedies.  Specifically, the plaintiffs argue that NAF's rules have a "loser pays" rule, which contravenes the mandates of the Texas and Illinois consumer protection statutes, and that NAF's rules deprive the plaintiffs of punitive damages, again in contravention of their statutory rights under the consumer laws of Texas and Illinois.  The plaintiffs also argue that the defendant's arbitration agreement prevents arbitration on a class-wide basis.   

With regard to the plaintiffs' argument that the arbitration agreement deprives them of their statutory rights by imposing a "loser pays" rule, we note that NAF's code of procedure states in Rule 37C: "An Award may include fees and costs awarded by an Arbitrator in favor of any Party 
only as permitted by law
 or in favor of the Forum for fees due."  (Emphasis added.)  Nat'l Arbitration Forum Code of Procedure R. 37C, eff. July 1, 2000.  The complete rule belies the plaintiffs' argument.  If the statute does not provide for awarding fees and costs (or attorney fees), NAF's arbitrator will not do so.  Additionally, the rule states that the arbitrator "may" impose fees and costs, which implies that the imposition of fees and costs is discretionary and not mandatory.  The plaintiffs' arguments in the trial court and on appeal are couched in generalities.  Because the plaintiffs failed to prove their argument in the trial court and have not shown on appeal that the arbitrators would impose such fees and costs on them, their argument fails.  See 
In re FirstMerit Bank, N.A.
, 52 S.W.3d 749, 756-57 (Tex. 2001) (the arbitration clause was not substantively unconscionable where no specific evidence was presented that excessive fees and costs would actually be charged to effectively deny the plaintiffs access to arbitration).     

The plaintiffs argue that the arbitration clause prevents punitive damages because the amount of filing fees in the arbitral forum rests upon the amount of damages asserted in a claim.  Therefore, in order for the plaintiffs to assert a claim for punitive damages, they would have to pay an excessive filing fee, making a request for punitive damages prohibitive.  Again, the plaintiffs have not shown that NAF would impose such fees upon them.  NAF's code of procedure states in Rule 44F, "Issues regarding filing fees, including the value of relief sought, may be raised by any Party and shall be resolved by the Director or by an Arbitrator."  Nat'l Arbitration Forum Code of Procedure R. 44F, eff. July 1, 2000.  The plaintiffs did not show in the trial court and have not shown on appeal how NAF's code of procedure, when considered as a whole, prevents them from recovering punitive damages.  It is the plaintiffs' burden to prove that the arbitration agreement is unconscionable (see 
In re Turner Brothers Trucking Co.
, 8 S.W.3d at 376-77), and the plaintiffs have not shown that it could not collect punitive damages because of the size of NAF's filing fees. 

The plaintiffs argue and the trial court held that the defendant's arbitration agreement was unconscionable because it prevented the plaintiffs from proceeding with a class action lawsuit.  We find the language of the court in 
AutoNation USA Corp.
, 105 S.W.3d at 200, to be instructive.  The court stated:

"This assumes that the right to proceed on a class-wide basis supercedes a contracting party's right to arbitrate under the FAA [(Federal Arbitration Act)].  However, the primary purpose of the FAA is to overcome courts' refusals to enforce agreements to arbitrate and to ensure that private agreements to arbitrate are enforced according to their terms.  [Citation.]  The Texas Supreme Court has made it clear that the FAA is part of [the] substantive law of Texas [citation] and has stressed that '[p]rocedural devises,' such as Rule 42[']s provision for class actions, 'may "not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action." '  [Citation.]  Accordingly, there is no entitlement to proceed as a class action. [Citations.]"  
AutoNation USA Corp.
, 105 S.W.3d at 200.

In 
AutoNation USA Corp.
, the plaintiff alleged that the arbitration provision in his agreement was substantively unconscionable because it prohibited class actions for small-damage consumer claims.  The court in 
AutoNation USA Corp.
 found that even though the plaintiff argued that "without the class action device, consumers will be disinclined to pursue individual remedies for small damages," the plaintiff had failed to demonstrate that the arbitration provision was substantively unconscionable.  
AutoNation USA Corp.
, 105 S.W.3d at 200.

Here, too, the plaintiffs' generalized arguments that they would be deprived of a remedy if they were forced to arbitrate are insufficient to sustain the burden of proving that the arbitration provision is unconscionable. 

Finally, the court found that the defendant's arbitration agreement results in favorable  decisions for the defendant "on an inordinate basis."  The defendant provided evidence to the trial court that in a three-year period, 5 disputes out of 20 went to arbitration.  Of the five disputes that were arbitrated, the defendant won two and lost three of the disputes.  These do not appear to be results favorable to the defendant on an inordinate basis.  The trial court's finding that the defendant's arbitration agreement was unconscionable was error.

CONCLUSION

In conclusion, the trial court erred in determining that the defendant's arbitration agreement was not a part of the parties' online contract, in denying the defendant's motion to strike, and in holding that the arbitration agreement was both procedurally and substantively unconscionable.  Therefore, we reverse the trial court's order denying the defendant's motion to compel arbitration and remand this case to the trial court with directions for the court to either stay or dismiss the proceedings and order the parties to arbitrate their disputes.  

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and the cause is remanded with directions.

Reversed; cause remanded with directions.

DONOVAN, P.J., and McGLYNN
(footnote: 1), J., concur.

FOOTNOTES
1:
Justice Maag participated in oral argument.  Justice McGlynn was later substituted on the panel and has read the briefs and listened to the audiotape of oral argument.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 08/12/05.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.