Rule 23 order filed
April 25, 2008;
Motion to publish granted
June 2, 2008.

NO. 5-07-0076

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| STEPHEN R. WIGGINTON and WEILMUENSTER & WIGGINTON, P.C., Individually and on Behalf of Others Similarly Situated, | ) Appeal from the ) Circuit Court of ) St. Clair County. ) |
| Plaintiffs-Appellees, | ) ) |
| v. | ) No. 03-L-455 ) |
| DELL, INC., f/k/a Dell Computer Corporation, | ) Honorable ) Lloyd A. Cueto, |
| Defendant-Appellant. | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiff, Stephen R. Wigginton, filed a class action, alleging that the defendant, Dell, Inc. (Dell), refused to honor rebates that it offered its customers to induce them to purchase computer equipment from Dell. The defendant filed a motion to compel arbitration. The court found that a prohibition on class arbitration contained in the defendant's arbitration clause was unenforceable, and it entered an order striking that prohibition and compelling arbitration. The defendant appeals, arguing that the arbitration clause in the parties' agreement is not severable and is enforceable in its entirety. We affirm.

On December 17, 2002, the plaintiff purchased $4,535.67 in computer equipment for his law firm. He was offered a $500 rebate on the equipment, which could be redeemed after the purchase. According to the plaintiff, he made several attempts to obtain the forms necessary to claim the rebates, both by calling Dell and by attempting to download the forms from Dell's Web site. He alleges that he was not able to obtain the forms for several months. When he submitted the rebate forms, the claim was rejected on the basis that the eligibility

1

period had expired. According to the plaintiff, he was never told that there was a limitation on the period of eligibility to claim the rebate.

On July 22, 2003, the plaintiff filed his original complaint in this matter. On September 22, the defendant filed its first motion to dismiss or, in the alternative, to compel arbitration and stay litigation pending arbitration. The defendant pointed to its terms and conditions of sale, which contain a provision that all disputes or claims against Dell are subject to binding arbitration, to be administered by the National Arbitration Forum. The arbitration clause further provides that "arbitration will be limited solely to the dispute or controversy between Customer and Dell." The terms and conditions also include a choice-of-law provision making disputes subject to Texas law.

On March 31, 2004, with the defendant's motion still pending, the plaintiff filed a first amended complaint, adding his law firm as a plaintiff. On May 7, 2004, the defendant filed a new motion to dismiss the amended complaint or, in the alternative, to compel arbitration and stay litigation pending arbitration.

On December 19, 2006, the court held a hearing in the matter. Prior to that time, both parties had submitted briefs in support of their positions. Although the plaintiff initially argued that the arbitration clause was unconscionable in its entirety, before the hearing he conceded that the dispute was subject to arbitration, but he argued that the prohibition on class arbitration was unconscionable. On January 11, 2007, the trial court entered an order striking the class arbitration prohibition and compelling arbitration. The court found that the class prohibition was unconscionable. On February 9, 2007, the defendant filed this interlocutory appeal pursuant to Supreme Court Rule 307(a) (188 Ill. 2d R. 307(a)).

As the defendant correctly contends, this court has applied Texas law to the same provision as the one at issue here and found it to be enforceable, in *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 835 N.E.2d 113 (2005). We emphasize that, while the *provision*

2

involved here is identical to the provision involved in *Hubbert*, the *circumstances* surrounding the formation of the contract in the instant case differ greatly from those in *Hubbert*. This distinction is significant for reasons we will explain in detail later. Moreover, in deciding to apply Texas law in *Hubbert*, we explained that we will only apply the law of another state pursuant to a choice-of-law provision if (1) there is some relationship between that state and the controversy at issue and (2) applying the other state's law does not violate the public policy of this state. *Hubbert*, 359 Ill. App. 3d at 982, 835 N.E.2d at 120 (citing *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 758-59, 509 N.E.2d 751, 753-54 (1987)). In *Hubbert*, we found no public policy reason not to apply Texas law. *Hubbert*, 359 Ill. App. 3d at 982, 835 N.E.2d at 120. This conclusion has been undermined by subsequent decisions of the Illinois Supreme Court.

In *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 857 N.E.2d 250 (2006), the supreme court found a class arbitration prohibition similar to the one here at issue to be unconscionable. This holding presents a conflict between Illinois law and Texas law that did not exist when we decided *Hubbert*. See *Hubbert*, 359 Ill. App. 3d at 982, 835 N.E.2d at 120 (noting that the result would be similar under the law of either state). For reasons we will explain, we find that it would violate the public policy of this state to enforce the provision at issue, even assuming it would be enforceable under Texas law. First, however, we turn to the impact of the differing circumstances surrounding the contract formation here and in *Hubbert*.

Under Texas law, as under Illinois law, there are two components to unconscionability–procedural and substantive. *Hubbert*, 359 Ill. App. 3d at 986, 835 N.E.2d at 123 (citing *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 198 (Tex. App. 2003)). Procedural unconscionability relates to the circumstances surrounding the formation of the contract, while substantive unconscionability deals with the unfairness of the provision itself.

3

*Hubbert*, 359 Ill. App. 3d at 986, 835 N.E.2d at 123 (citing *AutoNation USA Corp.*, 105 S.W.3d at 198). When this court decided *Hubbert*, our precedents required us to find both procedural and substantive unconscionability in order to conclude that a provision was unconscionable. See *Zobrist v. Verizon Wireless*, 354 Ill. App. 3d 1139, 1147, 822 N.E.2d 531, 540 (2004). Subsequently, the supreme court rejected this requirement, holding that unconscionability may be *either* procedural *or* substantive; although it can be a combination of the two types, it does not need to include both. *Kinkel*, 223 Ill. 2d at 21, 857 N.E.2d at 263 (citing *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 99, 854 N.E.2d 607, 622 (2006)). It is less clear whether Texas courts will likewise invalidate a provision on the basis of either substantive unconscionability or procedural unconscionability alone. See *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002) (holding that Texas courts "*may* consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of the arbitration provision" (emphasis added)). Our research has revealed no Texas case that squarely addresses the issue as the supreme court did in *Razor* and *Kinkel*. We note, however, that at least one Texas appeals court has found contract provisions to be unenforceable after it had addressed only procedural unconscionability. *In re Brookshire Brothers, Ltd.*, 198 S.W.3d 381, 387 (Tex. App. 2006); *In re Turner Brothers Trucking Co.*, 8 S.W.3d 370, 377 (Tex. App. 1999).

As previously mentioned, we found that the contract at issue was not procedurally unconscionable in *Hubbert*. However, we find the circumstances surrounding contract formation sufficiently different to warrant a different conclusion in the instant case. In *Hubbert*, we emphasized the fact that the plaintiffs there had purchased their computer systems from Dell online. To do so, they had to go to five different pages within Dell's Web site. A blue hyperlink leading online purchasers to the purchase agreement appeared at the top of each page. *Hubbert*, 359 Ill. App. 3d at 979, 835 N.E.2d at 118. In addition, on three

4

of these pages, a statement appeared informing customers purchasing online that " '[a]ll sales are subject to Dell's Term[s] and Conditions of Sale.' " *Hubbert*, 359 Ill. App. 3d at 984, 835 N.E.2d at 121-22. We found that this was sufficient to put consumers on notice that there were terms and conditions that they should inquire about before completing the purchase. *Hubbert*, 359 Ill. App. 3d at 984, 835 N.E.2d at 122.

Further, the hyperlinks leading online purchasers to the terms and conditions appeared in a "contrasting blue color." *Hubbert*, 359 Ill. App. 3d at 987, 835 N.E.2d at 124. Once a customer clicked on the hyperlink to view the terms and conditions, he or she would see a notice at the top of the agreement stating in bold, capital letters that the purchase agreement included a dispute-resolution clause. *Hubbert*, 359 Ill. App. 3d at 987, 835 N.E.2d at 124. The arbitration clause itself appeared partially in all-capital letters, thereby drawing attention to itself. Under all of these circumstances, we found the provision to be conspicuous. *Hubbert*, 359 Ill. App. 3d at 987, 835 N.E.2d at 124. Although, as we noted, conspicuity is not required under either Texas law or Illinois law (*Hubbert*, 359 Ill. App. 3d at 986-87, 835 N.E.2d at 124 (citing *AutoNation USA Corp.*, 105 S.W.3d at 199)), it is a factor to be considered in determining whether a contract is procedurally unconscionable (see *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 990, 408 N.E.2d 403, 410 (1980) (explaining that the conspicuousness of a contract provision is an "important, albeit not conclusive[,] factor[]")).

In the case before us, by contrast, the plaintiff purchased his computer over the telephone. Unlike the plaintiffs in *Hubbert*, he did not go through a series of five steps during which he was repeatedly alerted to the fact that the purchase would be subject to terms and conditions that he could easily discover by clicking on a link. Unlike the plaintiffs in *Hubbert*, he did not see the terms and conditions until after he had purchased the computer systems.

5

We note that there is conflicting evidence regarding whether the plaintiff ever saw the terms and conditions at all. The defendant presented an affidavit in which one of its attorneys averred that Dell's policy was to include the terms and conditions of sale in the packaging for all equipment shipped to customers. Also included was Dell's total-satisfaction return policy, which provided that consumers could return the equipment for a full refund within 30 days if they were dissatisfied or did not wish to be subject to the terms and conditions of the sale. The plaintiff alleges that the terms and conditions were not included with the equipment he ordered.

The trial court did not resolve this conflict, and we do not believe that it was necessary for the court to do so. Accepting the defendant's version of events, there is no evidence whatsoever to suggest that the plaintiff had seen the terms and conditions of the sale prior to purchasing the computer equipment. This puts him on very different footing from consumers who purchase equipment online. Returning equipment after selecting, ordering, and paying for the equipment and waiting for it to be shipped is far more onerous than choosing to purchase equipment from a different supplier before making the purchase. This is precisely the type of unfair surprise that will lead to a finding of procedural unconscionability. See *Razor*, 222 Ill. 2d at 100-02, 854 N.E.2d at 623 (finding a warranty provision procedurally unconscionable where it was contained in the owner's manual of the car, unavailable to the consumer until she drove the car away from the dealer).

In sum, the circumstances that made the provision conspicuous and obvious to the plaintiffs in *Hubbert* prior to making their purchases are not present in the instant case. Although this fact, standing alone, does not automatically render the provision unconscionable, we are also dealing here with a contract of adhesion. Under Texas law, a contract of adhesion is a contract that is offered on a take-it-or-leave-it basis to a party who has no bargaining power and no ability to change the terms of the contract. *In re H.E. Butt*

6

*Grocery Co.*, 17 S.W.3d 360, 371 n.8 (Tex. App. 2000). Illinois's definition is similar. See *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 72, 563 N.E.2d 465, 487 (1990). This combination of unfair surprise and the lack of the ability to bargain over the terms of the contract leads us to conclude that the contract formed between the plaintiff and Dell in the instant case was at least somewhat procedurally unconscionable. See *Bess v. DirecTV, Inc.*, ___ Ill. App. 3d ___, ___, 885 N.E.2d 488, 497-98 (2008) (finding that a provision in a form contract offered to a consumer after she ordered services from a satellite television provider demonstrated at least "a degree of procedural unconscionability," despite finding the provision enforceable).

This conclusion does not end our inquiry. For one thing, it is not clear whether procedural unconscionability, standing alone, is sufficient to invalidate a contract provision under Texas law. Moreover, under Illinois law, a contract or provision may involve some degree of procedural unconscionability, but that may not be sufficient to render it unenforceable. In *Bess*, for example, a panel of this court found an arbitration provision presented to a consumer retroactively to be procedurally unconscionable, but it went on to conclude that the degree of procedural unconscionability was not sufficient to render the provision unenforceable without more. *Bess*, ___ Ill. App. 3d at ___, 885 N.E.2d at 496.

In reaching this conclusion, the *Bess* court pointed to the policy in favor of enforcing arbitration agreements. *Bess*, ___ Ill. App. 3d at ___, 885 N.E.2d at 497. We emphasize here that our policy in favor of enforcing arbitration agreements does not mean that an arbitration clause can never be found unenforceable based solely on procedural unconscionability. It means only that we resolve doubts in favor of enforceability. See *Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 181 Ill. 2d 373, 383, 692 N.E.2d 1167, 1172 (1998). We also emphasize that our policy in favor of enforcing arbitration agreements does not extend to complete prohibitions on the class treatment of disputes that happen to be contained in

7

arbitration agreements. Thus, we are far more inclined to resolve any doubts regarding the procedural unconscionability in favor of the consumer in this case.

The *Bess* court went on to analyze the consumer plaintiff's argument that the agreement was substantively unconscionable. There, unlike here, the provision permitted class arbitration, and there, unlike here, the contract provided that if the fee for class arbitration exceeded the filing fee applicable to bringing a similar action in court, the defendant would pay the excess. *Bess*, ___ Ill. App. 3d at ___, 885 N.E.2d at 500-01. The court thus found no substantive unconscionability. *Bess*, ___ Ill. App. 3d at ___, 885 N.E.2d at 501. This case differs from *Bess* in both respects. Although a finding of procedural unconscionability *can* be sufficient to render a provision unenforceable, as previously noted, unconscionability can be procedural, substantive, *or a combination of both*. *Razor*, 222 Ill. 2d at 99, 854 N.E.2d at 622. We thus consider the parties' arguments regarding substantive unconscionability. For the reasons that follow, we find that the combination of procedural and substantive unconscionability present here is enough to render the prohibition on class arbitration unenforceable.

We first acknowledge that, as we have already mentioned, we found that the provision here at issue was not substantively unconscionable under Texas law in *Hubbert*. The defendant argues that *Hubbert* controls our decision here. The plaintiff, however, asks us to reconsider our holding in *Hubbert*. He advances two principal arguments in support of his position. First, the plaintiff argues that our interpretation of Texas law in *Hubbert* was incorrect. Specifically, he contends that the Texas court that decided *AutoNation USA Corp.*, the case we relied on in reaching our conclusion, expressly declined to decide the precise issue before us. Second, he argues that in light of our supreme court's subsequent holding in *Kinkel*, enforcing the provision at issue would violate the public policy of Illinois even assuming it would be enforced under Texas law. We address these arguments in turn.

It is true, as the plaintiff contends, that the *AutoNation USA Corp.* court expressly noted that the plaintiff there did not claim that the provision at issue in that case prevented her from pursuing her claim using class arbitration. *AutoNation USA Corp.*, 105 S.W.3d at 200 n.4. However, the court also found that her argument that the cost of individual arbitration would discourage consumers from pursuing claims for small amounts of damages to be a "generalization[] [that did] not satisfy her burden" of demonstrating unconscionability. *AutoNation USA Corp.*, 105 S.W.3d at 200. Although the *AutoNation USA Corp.* court acknowledged that "there may be circumstances in which a prohibition on class treatment may rise to the level of fundamental unfairness" that would support a finding of substantive unconscionability (*AutoNation USA Corp.*, 105 S.W.3d at 200), we find no significant difference between the arguments rejected in *AutoNation USA Corp.* and those raised either in *Hubbert* or in this case. We need not determine whether our application of Texas law in *Hubbert* was correct, however, because we agree with the plaintiff that it would violate the public policy of this state to enforce a contract that is unconscionable under Illinois law under the circumstances of this case.

In *Kinkel*, the supreme court adopted the following definition of substantive unconscionability:

> " 'Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. [Citation.] Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.' " *Kinkel*, 223 Ill. 2d at 28, 857 N.E.2d at 267 (quoting *Maxwell v. Fidelity Financial Services, Inc.*, 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995)).

The court applied this definition to a prohibition on class arbitration and found it to be

unconscionable. *Kinkel*, 223 Ill. 2d at 42, 857 N.E.2d at 274.

As the defendant correctly points out, the court did not find class arbitration waivers to be *per se* unenforceable. *Kinkel*, 223 Ill. 2d at 38, 857 N.E.2d at 273. Rather, the court held that the determination must be made on a case-by-case basis, considering such circumstances as "the fairness and balance of the contract terms, the presence of unfair surprise, and the cost of vindicating the claim relative to the amount of damages that might be awarded." *Kinkel*, 223 Ill. 2d at 42-43, 857 N.E.2d at 275 (citing *Maxwell*, 184 Ariz. at 89, 907 P.2d at 58). Additional circumstances to consider include whether the contract is one of adhesion, whether the cost of arbitration is disclosed in the contract (*Kinkel*, 223 Ill. 2d at 42, 857 N.E.2d at 274-75), and whether the underlying claim is the type of claim the average consumer would be aware of (*Kinkel*, 223 Ill. 2d at 29-30, 857 N.E.2d at 267-68).

The instant case involves a contract of adhesion that was not brought to the attention of the consumer until after he had completed the purchase. The cost of arbitrating a claim is not disclosed in the contract. On its face, the provision requires only that "any claim, dispute[,] or controversy *** *against Dell*" is subject to mandatory arbitration (emphasis added). All of these factors weigh in favor of a finding of unconscionability.

In determining whether the cost of vindicating a claim individually is prohibitively expensive, we must consider both the arbitration fees and the attorney fees, unless the claim is one that would be easy for the average consumer to recognize and successfully arbitrate without representation. The inquiry is whether, in light of these costs and the potential recovery, the plaintiff can be made whole. *Kinkel*, 223 Ill. 2d at 29-30, 857 N.E.2d at 268. Here, the plaintiff asserted causes of action for a breach of contract, unjust enrichment, and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2002)). These are not the types of claims the average consumer would be able to arbitrate successfully without the aid of an attorney.

10

It is important to note that the Consumer Fraud Act provides Illinois residents with both the right to proceed as a class representative and the right to be a member of a plaintiff class. See *Kinkel*, 223 Ill. 2d at 35, 857 N.E.2d at 271 (explaining that Illinois consumers lose their statutory right "to be either the representative or a member of a class" if a class arbitration waiver is enforced). Thus, it is not only the plaintiff's ability to vindicate his claim we are concerned with here; it is the right of all potential Illinois class members. The plaintiff alleges in his complaint that he was promised $500 in rebates that the defendant refused to honor. He alleges that he purchased two computers, each of which carried a promised $250 rebate. The plaintiff's $500 claim is relatively small, and many class members will have claims of as little as $250. As noted, the arbitration fees are not disclosed in the contract. The record contains a copy of the National Arbitration Forum's rules and procedures, which provides that for consumer claims of under $2,500, the consumer must pay a filing fee of $25 and half of the $150 fee for a hearing. This amounts to a total of $100. Add to that the attorney fees and the cost of obtaining necessary evidence, and the cost of vindicating a claim is likely to exceed the potential recovery for most if not all potential Illinois class members. We thus conclude that enforcing the class arbitration waiver against Illinois consumers violates the public policy of this state. We note that we do not purport to determine whether applying the bar on class arbitration to non-Illinois consumers would likewise violate the public policy of other states. We hold only that the Illinois plaintiff cannot be prevented from seeking to arbitrate his claim as the representative of a class and that Illinois consumers cannot be prevented from being members of that class.

We next turn to the defendant's contention that the court erred in severing the prohibition on class arbitration from the remainder of the arbitration provision. We first note that, were we to accept this argument, it would not help the defendant's position. Having found the prohibition on class arbitration to be unconscionable, we will enforce the

remainder of the arbitration provision only if it can be severed from the unenforceable portion of the provision. To hold otherwise would mean that courts must enforce unconscionable provisions as long as they are contained within otherwise-enforceable clauses. This would be a ludicrous result and would undermine the doctrine of unconscionability.

In any event, we agree with the plaintiff that the prohibition on class arbitration can be severed from the remainder of the arbitration clause so that the remainder of the clause can be enforced. An unenforceable provision is severable unless it is "so closely connected" with the remainder of the contract that to enforce the valid provisions of the contract without it "would be tantamount to rewriting the [a]greement." *Abbott-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 21, 619 N.E.2d 1337, 1344 (1993). Also relevant is whether the contract contains a severability clause. *Harkabus*, 250 Ill. App. 3d at 21, 619 N.E.2d at 1343. In the instant case, there is no severability clause, but we do not find this fact dispositive. The main goal of an arbitration clause is to choose an arbitral forum over a judicial forum. This goal can be met with or without the class arbitration bar.

The defendant argues, however, that because the rules of the National Arbitration Forum, the forum selected in the contract, do not permit class arbitrations, enforcing the remainder of the clause without the prohibition would require the defendant's chosen forum to alter its rules or else it would require the parties to submit the dispute to a different forum. Assuming the defendant's forum is only willing or able to arbitrate claims on an individual basis, we do not find that submitting the dispute to a different arbitral forum would undermine the goal of arbitrating the claim.

This court has found that where a portion of an arbitration clause is found to be unconscionable, Illinois's strong policy in favor of enforcing arbitration agreements is best served by severing the unconscionable provision and enforcing the remainder of the

12

arbitration clause. *Kinkel v. Cingular Wireless, LLC*, 357 Ill. App. 3d 556, 569, 828 N.E.2d 812, 823-24 (2005) *aff'd*, 223 Ill. 2d 1, 857 N.E.2d 250 (2006). This is because the courts are still testing the bounds of mandatory arbitration agreements. Given this state of flux, to invalidate entire arbitration agreements every time a minor provision is found to be unenforceable would undermine this policy. *Kinkel*, 357 Ill. App. 3d at 569, 828 N.E.2d at 824 (relying on *Spinetti v. Service Corp. International*, 324 F.3d 212, 220-21 (3d Cir. 2003) (relying on *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682 (8th Cir. 2001))).

For these reasons, we affirm the order of the trial court.


Affirmed.


STEWART, P.J., and DONOVAN, J., concur.

NO. 5-07-0076

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| STEPHEN R. WIGGINTON and WEILMUENSTER & WIGGINTON, P.C., Individually and on Behalf of Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 03-L-455 |
| | ) | |
| DELL, INC., f/k/a Dell Computer Corporation, | ) | Honorable |
| | ) | Lloyd A. Cueto, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

**Rule 23 Order Filed:** April 25, 2008
**Motion to Publish Granted:** June 2, 2008
**Opinion Filed**: June 2, 2008

---

**Justices**:  Honorable Melissa A. Chapman, J.

Honorable Bruce D. Stewart, P.J., and
Honorable James K. Donovan, J.,
Concur

---

**Attorneys for Appellant**   Robert J. Bassett, Donovan, Rose, Nester & Joley, P.C., 8 E. Washington Street, Belleville, IL 62220; Michael T. Brody, Jerold S. Solovy, Kathy A. Karcher, Benjamin K. Miller, Suzanne M. Courtheoux, Jenner & Block, LLP, 330 N. Wabash Avenue, Chicago, IL 60611

---

**Attorneys for Appellees**   Gail G. Renshaw, Bradley M. Lakin, Gerald R. Walters, The Lakin Law Firm, P.C. 300 Evans Avenue, P.O. Box 229, Wood River, IL 62095