May, J.
The enforcement of an arbitration clause in an internet sale of dietary supplements is the issue in this appeal. A seller of dietary supplements appeals a non-final order denying its motion to compel arbitration in a products liability action. The issue is whether the terms and conditions located on the seller’s website, which included an arbitration clause, were effectively incorporated into the sales agreement between the plaintiff purchaser and the seller. The trial court concluded that the arbitration clause was not incorporated and denied the seller’s motion to compel arbitration. We agree with the trial court and affirm.
The plaintiff purchased dietary supplements, which allegedly caused serious damage to his liver. After the plaintiff filed his complaint, the seller moved to compel arbitration. The seller argued the “terms and conditions of sale,” which were accessible via hyperlink during the online transaction, were incorporated into the sales agreement as part of a “browsewrap” agreement. Florida does not appear to have ruled on the enforceability of an arbitration clause in a “browsewrap” agreement making this a case of first impression.
“While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.” Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 403 (2d Cir.[ ]2004). One such principle is the requirement that “[mjutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.” Specht v. Netscape Commc’ns Corp., 306 F.3d 17, 29 (2d Cir.[ ]2002) (applying California law).
Nguyen v. Barnes & Noble, Inc., 763 F.3d 1171, 1175-76 (9th Cir. 2014).
There are at least two types of agreements found in internet sales, a “browsewrap” and a “clickwrap” agreement. Id. A “clickwrap” agreement occurs when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions. “Clickwrap” agreements are generally enforceable. Id.
A “browsewrap” agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. Id. at 1176. The purchaser can complete the transaction without visiting the page containing the terms and conditions. “Browsewrap” agreements have only been enforced when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice. Id. at 1176-77.
The seller argues that the terms and conditions on its website were conspicuous enough to put the plaintiff on inquiry notice during the purchase. The seller filed a *763 sworn affidavit from one of its officers in support of its motion to compel, attaching screenshots of the seller’s website showing where the hyperlink to the “terms and conditions of the sale” is situated on each webpage.
Throughout most of the purchase process, the hyperlink appears at the very bottom of the seller’s webpage and can be seen only if the purchaser scrolls to the bottom. Based on the webpage printouts, a purchaser would have to scroll through multiple pages of products before reaching the bottom where the link is located. The following screenshot of the bottom of the webpage shows the hyperlink circled:
[[Image here]]
When purchasers are ready to check out and click on their shopping cart, the hyperlink shifts over to the far right column, but it is still situated toward the bottom of the page. At this point, the hyperlink is labeled “terms and conditions,” not “terms and conditions of sale.” According to the affidavit, the “terms and conditions” hyperlink on the checkout page is in “bright blue” font. The following is a screenshot of the check-out page, which shows the hyperlink circled:
*764 [[Image here]]
In response to the seller’s motion, the plaintiff filed an affidavit asserting that he did not have actual knowledge of the terms and conditions of the sale. He also filed an affidavit from one of his attorneys, attesting that he went through the purchase process on the seller’s website and was never directed to review the “terms and conditions of sale.” Screenshots from his transaction are attached to the affidavit as exhibits. With respect to hyperlink positioning, these screenshots match the screenshots attached to the seller’s affidavit.
The trial court denied the motion to compel, finding the hyperlinks were not conspicuous enough to put the plaintiff on inquiry notice of the “terms and conditions of sale.” From this order, the seller now appeals.
We have de novo review of “[a]n order granting or denying a motion to compel arbitration....” Berkowitz, Dick, Pollack & Bryant v. Smith, 49 So.3d 309, 311 (Fla. 4th DCA 2010). However, any findings of fact will be upheld if they are supported by competent substantial evidence. CFC of Delaware LLC v. Santalucia, 91 So.3d 899, 901 (Fla. 4th DCA 2012).
In Florida, to incorporate a collateral document into an agreement, the agreement must: (i) specifically provide that the collateral document is being incor *765 porated; and (ii) sufficiently describe the collateral document being incorporated. BGT Grp., Inc. v. Tradewinds Engine Servs., LLC, 62 So.3d 1192, 1194 (Fla. 4th DCA 2011).
“Browsewrap” agreements have only been enforced when the hyperlink to the terms and conditions is conspicuous enough to place the user on inquiry notice. Nguyen, 763 F.3d at 1176-77. Uniformly, courts have declined to enforce “browse-wrap” agreements when the hyperlink to the terms and conditions is buried at the bottom of the page, and the website never directs the user to review them. Id. at 1177.
The seller relies heavily on Hubbert v. Dell Corp., 359 Ill.App.3d 976, 296 Ill.Dec. 258, 835 N.E.2d 113, 121 (2005). There, the plaintiff sued a seller following a dispute regarding computers purchased on the seller’s website. Id., 296 Ill.Dec. 258, 835 N.E.2d at 117. To purchase the computers, the plaintiff had to complete three separate webpage forms, which expressly stated: “All sales subject to Dell’s Terms and Conditions of Sale.” Id. 296 Ill.Dec. 258, 835 N.E.2d at 121-22. Each webpage contained a blue hyperlink labelled “Terms and Conditions of Sale.” Id. 296 Ill.Dec. 258, 835 N.E.2d at 121. The court found the terms and conditions of sale were incorporated into the online contract.
The statement that the sales were subject to the defendant’s “Terms and Conditions of Sale,” combined with making the “Terms and Conditions of Sale” accessible online by blue hyperlinks, was sufficient notice to the plaintiffs that purchasing the computers online would make the “Terms and Conditions of Sale” binding on them.
Id. 296 Ill.Dec. 258, 835 N.E.2d at 122.
Here, unlike Hubbert, none of the webpages made the plaintiffs purchase subject to the “terms and conditions of sale.” The seller’s website allowed a purchaser to select a product and proceed to check-out without seeing the hyperlink to the "terms and conditions” because the hyperlink would not be visible unless the purchaser scrolled to the bottom of the page. Once on the check-out webpage, the hyperlink is only labeled “terms and conditions,” and the page contains no statement that the sale is subject to those “terms and conditions.”
In other cases cited by the seller, courts held that the “terms and conditions” were not incorporated into the agreement. Hines v. Overstock.com, Inc., 668 F.Supp.2d 362, 367 (E.D.N.Y. 2009) (holding that terms and conditions unenforceable where user would have to scroll to the bottom of the webpage to see the hyperlink); In re Zappos.com, 893 F.Supp.2d 1058, 1064 (D. Nev. 2012) (holding that terms and conditions were not incorporated where hyperlink was buried near the bottom of the webpage).
Finally, the seller claims that a message directing purchasers to review their orders, which appears at the bottom of the checkout webpage, is sufficient to put purchasers on inquiry notice of the terms and conditions. Specifically, the message reads: “Before submitting your order, please take a moment to make sure everything looks good.” This is hardly an admonition for the purchaser to check and agree to the terms and conditions of the sale.
The seller does riot claim that existing Florida case law supports its position. Indeed, Florida law does not support the seller. Florida law requires the agreement to specifically provide that the collateral document is being incorporated and to sufficiently describe the collateral document to be incorporated. BGT Grp., Inc., 62 So.3d at 1194. The seller’s webpages failed to advise the plaintiff that his purchase *766 was subject to the terms and conditions of the sale and did not put him on inquiry-notice of the arbitration provision. See, e.g., Herman v. Seaworld Parks & Entertainment, Inc., 2016 WL 7447555 (Fla. M.D. Aug. 26, 2016).
We agree with the trial court that the terms and conditions of sale, including the arbitration agreement, were not sufficiently incorporated into the internet sales agreement between the plaintiff and the seller. The trial court correctly denied the seller’s motion to compel arbitration.

Affirmed.

Taylor and Gerber, JJ., concur.