# Third District Court of Appeal

## State of Florida

Opinion filed December 26, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-375
Lower Tribunal No. 12-17187
_____

## MetroPCS Communications, Inc. and MetroPCS Florida, LLC,
Appellants,

vs.

## Jorge Porter,
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Drinker Biddle & Reath LLP (San Francisco), Michael J. Sortz (San Francisco), Carlton Fields Jorden Burt, P.A., Aaron S. Weiss, and Steven M. Blickensderfer, for appellants.

Dorta Law, Gonzalo R. Dorta, for appellee.

Before ROTHENBERG, C.J., and FERNANDEZ and LUCK, JJ.

PER CURIAM.

MetroPCS Communications, Inc., et al., a wireless telephone service company, appeals from the denial of its request for enforcement of an arbitration provision against Jorge Porter. The issue is whether Porter was on notice of the arbitration provision contained in MetroPCS' terms and conditions of service. Because we conclude Porter was provided with inquiry notice, we reverse the order denying arbitration.

*Factual and Procedural Background*

Porter filed this putative class action claiming that MetroPCS violated Florida's Deceptive and Unfair Trade Practices Act when it improperly charged Porter and other MetroPCS customers sales tax on the full price of mobile phones purchased using a rebate. MetroPCS moved to compel arbitration of the claim based on a provision found in its terms and conditions of service. The trial court summarily denied MetroPCS' motion. In <u>MetroPCS Communications, Inc. v. Porter</u>, 114 So. 3d 348, 348 (Fla. 3d DCA 2013), this court reversed the summary denial "for a determination after an evidentiary hearing of the threshold issue of whether the arbitration clause was contained in a binding agreement between the parties."

On remand, the trial court held an evidentiary hearing where it heard testimony from Porter, Mr. Avila, the former MetroPCS sales agent who sold Porter his phone in 2012, and MetroPCS representative, Ms. Brown. The testimony and documents admitted revealed the process used by MetroPCS to inform its customers

of its terms of use. Three different notice methods are germane to Porter's interaction with MetroPCS: (1) written documents at sale; (2) pre-litigation text messages; and (3) post-litigation text messages.

(1) <u>Written documents at sale</u>.

At the hearing, Mr. Avila could not remember Porter or the transaction with him specifically. When asked about the procedure he normally followed in selling MetroPCS phones, Mr. Avila testified he filled out a start of service form in triplicate, keeping the top sheet and giving the customer the remainder of the form. The customer copy of the form warned that use of MetroPCS services acknowledged acceptance of the company's terms and conditions of service and gave a webpage link to those terms and conditions. In addition, the second page of the form entitled "MetroPCS Terms and Conditions of Service" summarized the terms and conditions, including arbitration of any disputes.

Avila further testified he would take the phone out of the box to activate it, and on occasion to transfer data from the customer's prior phone. He would then give the customer the phone and the box the phone came in. The box contained the phone charger, other accessories, if any, and a small booklet. The booklet was a quick start guide which accompanied all phones sold by MetroPCS. The quick start guide also warned that use of MetroPCS services denoted agreement to the company's terms and conditions of use which included arbitration of any disputes.

Porter admitted he was a MetroPCS customer since 2009 and purchased several phones from MetroPCS during that time. MetroPCS provided him with prepaid cellular service for his phones. Porter would receive a text message from MetroPCS alerting him that his payment was due and, around the 26th of each month, he paid in advance for the upcoming month's service. With regard to the purchase of his phones, Porter testified that each time he left the store only with his new phone and a payment receipt. He vehemently denied receiving any packaging or other materials with the phone.

(2) Pre-litigation text messages.

As Porter testified, each month MetroPCS would send a text message to Porter's phone reminding him that his payment was due for next month's service. Porter would then go to a MetroPCS store to make his payment. A screenshot of an August 2012 text message depicted the typical payment reminder: "Please pay $70.00 by 8/26/12 for [account number] to avoid service interruption. Terms&Condition apply." After payment, a second message acknowledged payment and also contained the warning that terms and conditions applied. An example of a payment text message read: "Thank you for your $70.00 pymt on [account number]. Pymt posted on 08/23/12 03:18p. Terms&Conditions apply." Porter understood that the phrase "Terms&Conditions" was a link through which he could access information of MetroPCS's terms and conditions on his phone.

However, Porter never accessed the information because he believed he "had no reason to go there."

(3) Post-litigation text messages.

Sometime in 2014, well into the litigation of the instant case, MetroPCS's payment reminder text messages changed. They now expressly referred to arbitration as evidenced by the March 26, 2014 message: "Please pay $75.00 by 03/26/14 for [account number] to avoid service interruption. MetroPCS Terms&Conditions including arbitration apply. See www.metropcs.com/terms." Porter testified he was shocked by the message's reference to arbitration.

Based on the evidence presented, the trial court found that Porter did not receive the purchase documents. Additionally, although it found that Porter received both the pre-litigation and post-litigation text messages, the trial court concluded that the messages did not put Porter on notice of the arbitration provision. Thus, the trial court decided there was no binding agreement to arbitrate and again denied the motion to compel arbitration. MetroPCS appeals this ruling.

*Standard of Review*

In reviewing an order denying arbitration on the ground that the parties' did not agree to arbitration, this court employs a mixed standard of review. We review the record for substantial, competent evidence to support the trial court's findings of fact and consider de novo its conclusions of law.  See Gainesville Health Care Ctr.,

5

Inc. v. Weston, 857 So. 2d 278, 283 (Fla. 1st DCA 2003) ("The standard of review applicable to the trial court's factual findings is whether they are supported by competent, substantial evidence. However, the standard of review applicable to the trial court's construction of the arbitration provision, and to its application of the law to the facts found, is *de novo.*" (citation omitted)).

*Discussion*

Porter may be compelled to arbitrate his dispute with MetroPCS only if he agreed to do so. See Basulto v. Hialeah Auto., 141 So. 3d 1145, 1157 (Fla. 2014) ("Because the buyers have not agreed to the [arbitration clause], they cannot be compelled to arbitrate their claims for monetary relief."). After a great deal of debate, both courts and legal commentators have concluded that well-settled legal principles of contract formation suffice to decide cases, such as this one, involving contracts entered into and evidenced by electronic means. See, e.g., Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 403 (2d Cir. 2004) ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.); Juliet M. Moringiello & William L. Reynolds, From Lord Coke to Internet Privacy: The Past, Present, and Future of the Law of Electronic Contracting, 72 Md. L. Rev. 452, 455 (2013) ("Soon … the courts recognized that the legal problems posed by the new technology were no different than those that had been presented in the preceding century and, therefore, judges rejected efforts

6

to change the basic law of contracts." (footnote omitted)). Hence, we look to those well-settled principles to determine whether the parties here agreed to arbitrate disputes arising from their electronic contract.

The key issues in most cases involving electronic contract formation is notice and manifestation of assent. In Vitacost.com, Inc. v. McCants, 210 So. 3d 761, 762 (Fla. 4th DCA 2017), the court described the two types of agreements generally found in internet sales cases which concern issues of notice and assent. "A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." Id. "A 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. The purchaser can complete the transaction without visiting the page containing the terms and conditions." Id. The agreement in this case does not precisely fit within either category, although it is akin to a browsewrap agreement in that Porter completed his transaction with MetroPCS without visiting the web page containing the terms and conditions. As Vitacost.com recognized "'[b]rowsewrap' agreements have only been enforced when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." Id. at 763. In Vitacost.com,

the agreement was not sufficiently conspicuous because the purchaser had to scroll through multiple pages of products before locating the hyperlink at the bottom of a final webpage.

The notice to Porter via the pre-litigation text messages was more direct.[1] Between the sale and the filing of this action, MetroPCS sent text messages to Porter each month letting Porter know that payment for next month's service was due and then acknowledging payment for the service. These text messages informed Porter that terms and conditions applied to use of the service. The reference to terms and conditions was a hyperlink which Porter could use to read the terms and conditions. The hyperlink was at the end of the short text messages. In marked contrast to the circumstances in Vitacost.com and other browsewrap cases, the hyperlink was not buried in pages of information or hidden at the foot of a web page. Here notice that terms and conditions applied was conspicuous.

Porter admitted he saw the messages and the trial court found that Porter received the text message. Porter also testified he understood the messages contained a hyperlink which he could use to read the terms and conditions. Porter simply chose

---

[1]If any of the means used by MetroPCS to communicate its terms and conditions of service to its customers reached Porter, his continued use of the company's services constituted assent to the terms and conditions and he must arbitrate. Thus, we will confine our analysis to the one method which we conclude sufficed as notice – the pre-litigation text messages.

not to click on the hyperlink. "[A] person has no right to shut his eyes or ears to avoid information, and then say that he has no notice." Sapp v. Warner, 141 So. 124, 127 (Fla. 1932); see also Meyer v. Uber Techs., Inc. 868 F.3d 66, 74-75 (2d Cir. 2017) ("Where there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms.").

*Conclusion*

Accordingly, because Porter was put on notice that his contract with MetroPCS was subject to arbitration, we reverse the trial court's order denying arbitration on the ground that the parties did not agree to arbitrate disputes arising from their contract.[2,3] The case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

[2]Both parties agree and we concur that the trial court erred in sua sponte extending its ruling regarding arbitration to similarly situated putative class members.

[3]Although on appeal the parties briefed the issue of unconscionability, the trial court never ruled on the issue because it found that there wasn't a binding arbitration agreement. Having reversed on that ground, we leave it to the trial court to decide the unconscionability issue in the first instance. See Akers v. City of Miami Beach, 745 So. 2d 532 (Fla. 3d DCA 1999) ("Appellee would have us affirm the summary judgment nevertheless on the alternative ground that there is insufficient evidence to support a finding of negligence on the part of the City. Because the trial court based its judgment solely on the workers' compensation immunity and this court should not ordinarily decide issues not ruled on by the trial court in the first instance, we reverse the summary judgment and express no opinion as to the legal merits of appellee's alternative ground at this time.").