# Third District Court of Appeal

## State of Florida

Opinion filed March 10, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-297
Lower Tribunal No. 18-23514
_____

**City of Miami,**
Appellant,

vs.

**Yesid Ortiz And Reynaldo Irias,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Alan Fine, Judge.

Victoria Méndez, City Attorney, and Eric J. Eves, Assistant City Attorney, for appellant.

Law Offices of Adorno-Cunill & Damas, PL, and John Cunill, for appellees.

Before EMAS, C.J., and HENDON and GORDO, JJ.

GORDO, J.

The City of Miami appeals the trial court's order granting a motion for summary judgment and ordering the parties to arbitrate in this declaratory action, which seeks application of the terms of the Collective Bargaining Agreement[1] with respect to two former City police officers. We have jurisdiction. See Fla. R. App. P. 9.030(b)(1)(A). The City argues summary judgment was improvidently granted because the parties disagree over whether the Officers resigned voluntarily, a threshold question of fact. It further argues that under the plain language of the Agreement, the parties did not agree to arbitrate questions of arbitrability, and thus, the trial court must resolve the question of voluntariness. We conclude a question of fact exists for the court as to whether the resignations were voluntary or involuntary. Accordingly, we reverse and remand.

**FACTUAL AND PROCEDURAL BACKGROUND**

The City alleged that the Officers were among those involved in a tow truck scheme whereby the Officers would call a tow truck operator from the scene of an accident who would then tow the cars to a particular repair shop.

---

[1] The Collective Bargaining Agreement is an agreement between the City and the Fraternal Order of Police with respect to wages, hours, and other terms of employment. The Agreement constitutes the scope of the bargained-for benefits from the City extended to bargaining unit members of the Fraternal Order of Police who are employed by the City. "The bargaining unit consists of all sworn employees" holding several enumerated positions, including "Officer."

According to the City, the Officers were receiving kickbacks from the repair shop. This scheme was being investigated by the FBI and Internal Affairs. As part of the Internal Affairs investigation, the Officers were interviewed, in the presence of their union representatives and admitted to knowing the tow truck driver under investigation and allowing him to tow vehicles from accident scenes to which they responded. Based on their admissions and the totality of its investigation, Internal Affairs determined that disciplinary action was appropriate. The Officers were then given two options: termination or resignation.[2] They executed letters of resignation.[3]

The Officers later filed grievances with the City, arguing their resignations were involuntary and seeking reinstatement on the basis that the City had violated Article 8 of the Agreement.[4] Before arbitration occurred, the City filed an action seeking a declaratory judgment on (1) whether an arbitrator has jurisdiction to determine if an employee voluntarily resigned and (2) whether the arbitrator would then have jurisdiction to

[2] It was determined that the Officers could not be demoted because they already held the lowest rank possible.

[3] The documents executed by the Officers were the union-approved form letters—inter-office memoranda with the subject "Voluntary Resignation." The memoranda stated, in part, "I am voluntarily resigning from my position as a Miami Police Officer. No threats, rewards or promises have been made to me. I have made this decision solely on my own premise."

[4] Article 8 governs the disciplinary procedure and outlines the rules for interrogating bargaining unit members that are under investigation.

reinstate that employee based on the voluntariness determination. The City argued that the voluntariness issue was not subject to arbitration under the plain language of the Agreement.

The Officers subsequently filed a motion for summary judgment arguing that their grievances were subject to arbitration under the Agreement. They also filed affidavits in support, claiming that it was an undisputed material fact that they executed the resignation letters under duress.

The City filed a response opposing the motion for summary judgment, as well as affidavits from two Officers in the Internal Affairs Division who averred that after being presented with the evidence against them, the Officers elected to voluntarily resign and executed the union-approved voluntary resignation letter.

The trial court granted summary judgment in favor of the Officers and ordered arbitration, finding the Agreement was broad enough to allow the arbitrator to determine voluntariness.

## LEGAL ANALYSIS

I. *Whether Summary Judgment was Appropriate*

A trial court's ruling on summary judgment is reviewed de novo. Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla.

4

2000). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Id. (citation omitted).

The Officers asserted below that their resignations were executed "under duress and not of [their] own free will." The City refuted this allegation and provided evidence in support of its position that the Officers had resigned voluntarily. Thus, there was an issue of fact for the trial court to resolve that prevented a grant of summary judgment.

## II. Whether an Arbitrable Issue Exists

We next turn to the City's argument that the trial court erred in ordering the parties to arbitrate. "[T]he standard of review applicable to the trial court's construction of the arbitration provision, and to its application of the law to the facts found, is de novo." MetroPCS Commc'ns, Inc. v. Porter, 273 So. 3d 1025, 1027 (Fla. 3d DCA 2018) (quoting Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 283 (Fla. 1st DCA 2003)).

Florida courts have long acknowledged a strong public policy in favor of arbitration. See, e.g., Waterhouse Constr. Grp., Inc. v. 5891 SW 64th St., LLC, 949 So. 2d 1095, 1099 (Fla. 3d DCA 2007). "All questions concerning the scope or waiver of the right to arbitrate under contracts should be resolved in favor of arbitration rather than against it." Zager Plumbing, Inc.

5

v. JPI Nat'l Constr., Inc., 785 So. 2d 660, 662 (Fla. 3d DCA 2001) (quoting Beverly Hills Dev. Corp. v. George Wimpey of Fla., Inc., 661 So. 2d 969, 971 (Fla. 5th DCA 1995)).

"Although Florida law . . . favors arbitration, it is still true that 'no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate.'" Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC, 249 So. 3d 765 (Fla. 1st DCA 2018) (citing Perdido Key Island Resort Dev., L.L.P. v. Regions Bank, 102 So. 3d 1, 3 (Fla. 1st DCA 2012)) (internal citations omitted). "Arbitration is a matter of contract." City of Miami v. Fraternal Order of Police Lodge #20, 248 So. 3d 273, 276 (Fla. 3d DCA 2018). "An arbitrator's authority to conduct an arbitration and the issue(s) to be arbitrated are granted and limited by the operative document(s) in question or by agreement of the parties themselves." Id. Accordingly, "[a] trial court's role in determining arbitrability under the Revised Florida Arbitration Code is limited to the following inquiries: '(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.'" Id. at 275 (quoting 3A Fla. Jur. 2d Arbitration and Award § 54).

The issue presented to the trial court below and to be reviewed on appeal in this case is whether an arbitrable issue exists. Necessary to that

6

determination here is whether the Officers voluntarily resigned because voluntary resignations are not explicitly covered by the terms of the Agreement.[5]  This Court has previously interpreted the exact contract at issue here in Fraternal Order of Police Lodge #20, 248 So. 3d 273.  There, we held that the Agreement should be construed narrowly and excludes claims not expressly covered by its terms.  Id. at 277.

Section 6.2 of the Agreement defines "grievance" as "any dispute, controversy or difference" between the parties "with respect to, on account of or concerning the meaning, interpretation or application of this Agreement or any terms or provisions thereof."   The Officers argue that because the Agreement has a broad, mandatory arbitration provision, their grievances must be arbitrated.  But the express terms of the Agreement afford different enumerated rights and grievance procedures to employees who are terminated as compared to those who voluntarily resign.  The Agreement's arbitration provision expressly limits a union member to "appeal a **suspension, demotion, or dismissal** through the grievance procedure." Agreement at § 6.6 (emphasis added).  The Officers acknowledge that the voluntariness of the resignation is a question of fact but contend that

---

[5] On appeal, the Officers concede that the voluntariness issue does not constitute part of their grievance and that their grievance has always been under Article 8 of the agreement.

7

question is irrelevant to the applicability of the Agreement's arbitration provision. The plain language of the Agreement, however, limits the arbitrator's authority to hear only certain grievances, which do not include voluntary resignation.

"[D]ecisions regarding arbitrability are to be made by the trial court, unless the parties have entered an agreement stating otherwise." Romano v. Goodlette Office Park, Ltd., 700 So. 2d 62, 64 (Fla. 2d DCA 1997). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." Morton v. Polivchak, 931 So. 2d 935, 938 (Fla. 2d DCA 2006) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Section 6.8, step 4, of the Agreement explicitly states that the arbitrator may only hear the grievances listed and "shall have no authority to change, amend, add to, subtract from, or otherwise alter or supplement this Agreement, or any part thereof, or any amendment thereto." See Fraternal Order of Police Lodge #20, 248 So. 3d at 276–77 ("In short, the Arbitrator is only given the authority to decide disputes over the meaning, interpretation, or application of the provisions found in the Collective Bargaining Agreement. The Arbitrator is not granted the authority to decide any other disputes." (citing Schnurmacher Holding, Inc. v. Noriega, 542 So. 2d 1327,

1329 (Fla. 1989))). The Agreement further states, "The Arbitrator shall have no authority to consider or rule upon any matter . . . which is not covered by this Agreement."

Based on the language in the Agreement, the parties did not agree to arbitrate issues of arbitrability. The issues they agreed to submit to arbitration are limited and enumerated and did not include questions of arbitrability.

As this Court recently stated, a trial court is charged with deciding whether the parties agreed to arbitrate an issue "because prematurely ordering arbitration before resolving [that question]. 'could result in an arbitrator deciding no agreement was ever formed.'" Jean v. Bayview Loan Servicing, LLC, 2021 WL 475270, at *2 (Fla. 3d DCA Feb 10, 2021) (quoting Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 219 (5th Cir. 2003)). "Logically, such an outcome could not stand, because it 'would be a statement that the arbitrator *never* had authority to decide the issue.'" Id. (quoting Will-Drill, 352 F.3d at 219).

## CONCLUSION

A question of fact remains, which precluded the entry of summary judgment—whether the officers resigned voluntarily or involuntarily. Under

9

the plain language of the Agreement, this disputed fact issue was a threshold question for the trial court, not the arbitrator.

Reversed and remanded for further proceedings consistent with this opinion.