[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11567

_____

IBALDO ARENCIBIA,

Plaintiff-Appellant,

versus

AGA SERVICE COMPANY
d.b.a. Allianz Global Assistance,
JEFFERSON INSURANCE COMPANY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-24694-BB

_____

Before WILSON, ROSENBAUM, Circuit Judges, and COVINGTON,* District Judge.

COVINGTON, District Judge:

This appeal arises from Ibaldo Arencibia's online purchase of a travel insurance policy — one he believed to be a broad, "no-fault" policy. When the insurer declined to provide coverage for a canceled trip, Arencibia filed the instant lawsuit. Arencibia appeals the district court's dismissal of his claims for unjust enrichment and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and the lower court's refusal to allow him to amend his complaint. Because the district court correctly dismissed Arencibia's claims without leave to amend, we affirm.

I

According to the amended complaint, on August 17, 2019, Arencibia purchased a roundtrip airline ticket on American Airlines' website from Miami, Florida, to Bogota, Colombia. When booking his ticket, Arencibia was offered the option of purchasing travel insurance from AGA Service Company, doing business as Allianz Global Assistance ("Allianz").[1] Arencibia alleges that the

---

* Honorable Virginia M. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

[1] Defendant Jefferson Insurance Company is the insurance underwriter.

offer box that appeared on American Airlines' website was substantially similar to the following:

Arencibia decided to purchase the travel insurance in exchange for the payment of a $36.83 premium. Following his purchase, Allianz emailed Arencibia a copy of the 36-page Individual Travel Insurance Policy (the "Policy"), which provided that he could cancel the Policy for any reason within ten days of purchase and receive a full refund.

Later, Arencibia was offered a stint of temporary employment in the United States on dates that overlapped with his planned trip to Bogota. Arencibia alleges that, "[t]hinking he was 'insured,'" he telephoned Allianz and was told that "his work conflict was not covered by his [travel insurance] policy." The Allianz representative directed Arencibia to cancel his flight and submit a claim under the Policy to "see what could be done." Arencibia did so, and on September 9, 2019, he received a letter from Allianz formally declining to provide coverage under the Policy. The September 9 letter stated in pertinent part that Allianz was "unable to provide benefits under the coverage [Arencibia]

purchased because . . . [the Policy] is a named perils travel insurance program, which means it covers only the specific situations, events and losses included in [the Policy], and only under the conditions we describe. Unfortunately, trip cancellation due to being required to work is not included among those reasons."

Arencibia alleges that the denial letter was in "stark contrast" with the representations made by Allianz prior to his purchase of the Policy. According to Arencibia, the Allianz offer box led him to believe that he was purchasing "broad, no fault insurance protection and coverage" such that, if he accepted the insurance option, he would not be responsible for any cancellation fees and would be reimbursed the price of his flight, no matter the reason for cancellation.

Based on this theory, Arencibia brought suit in the Southern District of Florida against American Airlines,[2] Allianz, and Jefferson, alleging claims for declaratory relief, unjust enrichment, violation of the Florida Deceptive and Unfair Trade Practices Act, violation of the federal RICO statute, and false advertising.

All three defendants filed motions to dismiss the original complaint. On August 5, 2020, the district court ordered that the entire case be transferred to the United States District Court for the Northern District of Texas, and that the pending motions to

---

[2] American Airlines is not a party to this appeal.

21-11567                Opinion of the Court                5

dismiss would also be transferred so that the court in Texas might rule upon them.

Upon transfer, the case was assigned to the Honorable Reed O'Connor, and Arencibia filed an amended complaint.[3] Pursuant to the court's order, the parties re-briefed their motions to dismiss. Judge O'Connor granted American Airlines' motion to dismiss and ordered that the remaining claims against Allianz and Jefferson be transferred back to the Southern District of Florida. After a third round of briefing, the district court in Florida dismissed the amended complaint in its entirety without leave to amend. This appeal followed.

## II

We review the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). We review a district court's denial of leave to amend a complaint for an abuse of discretion, but we review *de novo* its legal conclusion that amendment would be futile. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010). We may affirm a district court's decision on any ground supported by the record. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

---

[3] In the amended complaint, Arencibia raised substantially identical claims to those he brought in the original complaint, and any changes are not pertinent to the issues on appeal.

### III

Although the district court dismissed all Arencibia's claims, on appeal he challenges the dismissal of just two – his claims for unjust enrichment and for RICO violations. We will examine each in turn.

### A.                    Unjust Enrichment

The district court dismissed Arencibia's unjust enrichment claim for two independent reasons. First, it held that there is no private right of action under Florida's Unfair Insurance Trade Practices Act (FUITPA) for damages caused by false or deceptive representations concerning insurance coverage. Second, it held that the unjust enrichment claim was due to be dismissed because a valid contract existed between the parties.

We need not reach the FUITPA issue because even assuming (without deciding) that a private cause of action for unjust enrichment may exist with respect to the alleged violations under FUITPA, we affirm because a valid contract existed between Arencibia and Appellees.

Under Florida law, to state a claim for unjust enrichment, a party must establish all the following: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that would make it inequitable for him to retain it without paying the value thereof." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (cleaned up).

21-11567                Opinion of the Court                7

The general rule in Florida is that the equitable remedy of unjust enrichment is unavailable if an express contract exists. *Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007). Indeed, "[i]t is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984). That is so because "the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. 3d DCA 1987).

Here, an express contract – the Policy – existed. *See State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., Inc.*, 678 So. 2d 397, 400 (Fla. 4th DCA 1996) ("An insurance policy is a contract between the insured and the carrier."). And Arencibia does not dispute that he entered into an express contract of insurance with Jefferson and Allianz.

Instead, Arencibia argues that he may pursue an unjust enrichment claim because the Policy is "void and unenforceable." In Arencibia's view, Appellees induce consumers to enter into the Policy by "grossly misrepresenting" its contents. The facts, however, demonstrate that Appellees did not misrepresent the terms of the Policy. The Policy expressly warns consumers that flight cancellation coverage is not unlimited. Specifically, the Policy provides, in pertinent part:

### WHAT THIS POLICY INCLUDES AND WHOM IT COVERS

This travel insurance policy covers only the specific situations, events, and losses included in this policy, and only under the conditions described. For this reason, it is known as a "named perils" policy. Please review this policy carefully. . . .

NOTE:

Not every loss is covered, even if it is due to something sudden, unexpected, or out of your control. Only those losses meeting the conditions described in this policy may be covered.

The Policy also details the "covered reasons" that would trigger coverage — for example, if the insured or a family member became ill or injured, if the insured is in a traffic accident on the departure date, or if the insured is required to attend a legal proceeding during the trip. The Policy does not list a conflicting work commitment or the insured's unilateral decision to cancel the trip under "covered reasons."

What's more, Arencibia was given multiple opportunities to view the Policy's terms. When Arencibia first viewed the offer box on American Airlines' website, the offer of insurance warned consumers that it was subject to "terms, conditions, and exclusions," instructed consumers to "[s]ee coverage details," and provided consumers with a hyperlink to view the terms of the insurance coverage. Then, following Arencibia's purchase, Allianz also emailed Arencibia a copy of the Policy. Arencibia was afforded

a 10-day grace period to cancel the Policy for any reason and receive a full refund.

Even if Arencibia did not read the terms of the Policy before purchasing it, we agree with the district court that Arencibia was on inquiry notice that "[t]erms, conditions, and exclusions apply" because the hyperlink in the offer box was conspicuous and plainly disclosed. See MetroPCS Commc'ns, Inc. v. Porter, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018) (explaining that, under Florida law, browsewrap agreements like the one here are enforceable "when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice").

In addition, Arencibia does not deny that he received a full copy of the Policy shortly after his purchase and that he had ten days in which to review the Policy and cancel it for a full refund if he was dissatisfied for any reason. See Allied Van Lines, Inc. v. Bratton, 351 So. 2d 344, 347-48 (Fla. 1977) (explaining that a party is bound by his contract and charged with knowledge of its contents); Rocky Creek Ret. Props., Inc. v. Estate of Fox, 19 So. 3d 1105, 1108 (Fla. 2d DCA 2009) (holding that a party is generally bound by a contract the party signs unless he is prevented from reading it or induced by the other party to refrain from reading it).

Finally, Arencibia availed himself of the insurance by making a claim under the Policy, effectively conceding that a contract existed between the parties. The fact that Arencibia does

not like the terms of the Policy does not serve to make the contract unenforceable.

Accordingly, the district court's dismissal of Arencibia's unjust enrichment claim is affirmed.[4]

### B.                    RICO

In his amended complaint, Arencibia also brought a claim for alleged RICO violations, relying on the predicate acts of mail fraud and wire fraud to plead a pattern of racketeering activity. The district court held that this claim failed for multiple reasons, but we confine ourselves to just two.

Section 1962(c) of the RICO statute requires that a plaintiff prove that a defendant participated in an illegal enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" is defined to include such predicate acts as

---

[4] While this appeal was pending, Appellees drew the Court's attention to two recently issued decisions: *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084 (11th Cir. 2021) and *Pincus v. American Traffic Solutions, Inc.*, 333 So. 3d 1095 (Fla. 2022). In *Marrache*, this Court affirmed the dismissal of an unjust enrichment claim because the defendant made a full and accurate pre-sale disclosure of certain information and the plaintiff thus received what they bargained for. 17 F.4th at 1101-02. And in *Pincus*, the Florida Supreme Court held that the plaintiff's unjust enrichment claim failed as a matter of law because the defendant "gave value in exchange" to the plaintiff such that it was not inequitable for the defendant to retain a fee. 333 So. 3d at 1097. While these cases provide further support for the Court's decision, we need not address them in great detail, as Arencibia's unjust enrichment claim fails for the reasons described above.

mail and wire fraud. 18 U.S.C. § 1961(1). To state a claim, then, Arencibia needed to sufficiently allege that the defendants "intentionally participate[d] in a scheme to defraud another of money or property" and "use[d] the mails or wires in furtherance of that scheme." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991)). As we have explained:

> A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property. "Material" misrepresentations or omissions are ones having a natural tendency to influence, or capable of influencing, the decision maker to whom it is addressed. The misrepresentation or omission must be one on which a person of ordinary prudence would rely.

*United States v. Foster*, 878 F.3d 1297, 1304 (11th Cir. 2018) (internal citations and quotations omitted).

The district court correctly determined that Arencibia failed to plausibly allege a material misrepresentation, which is fatal to his RICO claim. As explained above, the Allianz offer box conspicuously warned Arencibia that "terms, conditions, and exclusions apply," Allianz provided him with a hyperlink to view those terms, Allianz provided him with the 36-page Policy at the time of purchase, and Arencibia was afforded ten days to review and cancel the Policy for any reason and receive a full refund. Arencibia does not deny that the terms and exclusions of coverage

were laid out in the full Policy that was sent to him, nor that he had ten days to review the Policy and cancel it if he was unhappy with any of the stated terms.

Thus, the offer box and Policy provided a full and accurate disclosure of the terms, conditions, and exclusions of the insurance coverage offered, and Arencibia has failed to plead any actionable misrepresentation by the Appellees.

Moreover, Arencibia failed to plausibly allege any injury caused by the alleged mail and wire fraud. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) ("A civil plaintiff must also show (1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation.") (quotation marks omitted) (quoting 18 U.S.C. § 1964(c)).

The district court correctly held that Arencibia could not demonstrate any injury under RICO because he received exactly what he bargained and paid for – insurance coverage for his roundtrip flight, subject to certain conditions and restrictions. In other words, Arencibia received the benefit of his bargain and has not suffered any injury or loss. Accordingly, his RICO claim was correctly dismissed.

### C.                    Leave to Amend

While district courts should freely give leave to amend when justice so requires, they need not grant leave to amend when such amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). "This court has found that denial of leave to amend is

justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (citation omitted).

The district court concluded that Arencibia's amended complaint failed to state a plausible claim for relief, despite Arencibia having the benefit of two fully briefed motions to dismiss prior to amendment. What's more, it held that amendment would be futile because his own allegations "negate" any misrepresentation on the part of Appellees. We agree. Arencibia's claims are fatally undermined by the offer box disclosures, and by the terms of and circumstances surrounding the Policy. The district court did not abuse its discretion in denying Arencibia leave to further amend his complaint.

## IV

For the reasons stated, we conclude that the district court did not err in dismissing Arencibia's operative complaint without leave to amend. Therefore, we affirm the district court.

**AFFIRMED.**