[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11270

_____

CARMEN CLAVELL LAMONACO,
an individual,

Plaintiff-Appellee,

*versus*

EXPERIAN INFORMATION SOLUTIONS, INC.,
a foreign for-profit corporation,

Defendant-Appellant,

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-01326-PGB-LHP

_____

Before JILL PRYOR, GRANT, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

The Federal Arbitration Act (FAA) requires courts to enforce arbitration agreements according to their terms. That includes honoring clauses that delegate threshold questions—such as waiver—to the arbitrator.

Carmen Lamonaco sued Experian Information Solutions, Inc., for violating the Fair Credit Reporting Act. Experian moved to compel arbitration under a clickwrap agreement that included both an arbitration clause and a delegation clause. The District Court denied the motion. It concluded that Experian had not carried its burden to show that an agreement existed and, alternatively, that Experian had waived arbitration by litigating.

Both rulings were mistaken. Experian submitted competent and unrebutted evidence that Lamonaco agreed to arbitrate disputes. And because the agreement delegated questions of waiver to the arbitrator, the District Court lacked authority to decide that issue. We reverse.

## I. Background

In April 2023, Carmen Lamonaco learned that a $26,922 auto loan had been reported on her credit file. She disputed the loan, asserting that someone else had fraudulently used her personal information. She contacted both Experian and the lender, United Auto Credit Corporation, to request correction. Although

Experian initially verified the loan, it ultimately removed it after additional review.

Lamonaco then sued in the District Court for the Middle District of Florida. She alleged that Experian violated the Fair Credit Reporting Act by failing to implement reasonable procedures to ensure credit report accuracy and by failing to conduct a proper reinvestigation. *See* 15 U.S.C. §§ 1681e(b), 1681i(a)(1).

Experian answered, filed a case management report, and engaged in initial Rule 26 disclosures. About three months later, it moved to compel arbitration. In support, it submitted a declaration from David Williams, a corporate officer of ConsumerInfo.com, an Experian affiliate. Williams attested that Lamonaco enrolled in the CreditCheck Total service on February 16, 2020, and that the enrollment process required her to input personal information and click a "submit" button below a bolded notice referencing the service's Terms of Use. Lamonaco could not proceed without agreeing to the Terms of Use. Williams included a screenshot of that page, which we attach here as Appendix A.

Williams also attached the Terms of Use Agreement. Those terms contain a broad arbitration clause covering "all disputes and claims" between the user and Experian or its affiliates, along with a delegation clause assigning to the arbitrator any dispute about the "scope and enforceability" of the arbitration clause. A later amendment made the point unmistakable:

> All issues are for the arbitrator to decide including,
> but not limited to, (i) all issues regarding arbitrability,

(ii) the scope and enforceability of this arbitration pro-
vision as well as the Agreement's other terms and
conditions, [and] (iii) whether you or [Experian],
through litigation conduct or otherwise, waived the
right to arbitrate . . . .

Williams further noted that Lamonaco downgraded her
membership from a paid subscription to a free version on May 5,
2020. The same Terms of Use applied to the free version. At the
end of his declaration, Williams subscribed under penalty of per-
jury that it was "true and correct."

Lamonaco opposed the motion. She expressly did not dis-
pute the scope of the arbitration agreement and did not contest that
ConsumerInfo.com is an Experian affiliate. But she argued that
Williams's declaration was insufficient to prove that she agreed to
arbitrate. And even if an agreement existed, she contended that Ex-
perian had waived arbitration through its litigation conduct.

In reply, Experian defended the adequacy of Williams's dec-
laration. It emphasized the absence of legal authority in Lamon-
aco's opposition and noted that she had not rebutted any of its ev-
idence. Experian also responded that the waiver question was for
the arbitrator.

The District Court denied Experian's motion. *Lamonaco v.
Experian Info. Sols., Inc.*, No. 6:23-CV-1326, 2024 WL 1703112 (M.D.
Fla. Apr. 19, 2024). It held that Experian failed to carry its burden
to show that an arbitration agreement existed and that, even if one

24-11270                Opinion of the Court                5

did, Experian had waived its right to compel arbitration. *Id.* at ⋆4–10.

As to the existence of an agreement, the Court concluded that Experian's declaration lacked probative value. *Id.* at ⋆4. The District Court explained that the declaration rested on a corporate officer's review of internal records that Experian did not attach, and it offered only conclusory assertions about Lamonaco's alleged enrollment in the credit monitoring service. *Id.* at ⋆4–6.

On the waiver question, the Court held that Experian had waived arbitration by failing to raise the issue until three months into litigation—after answering the complaint, participating in a case management conference, requesting a jury trial, and serving Rule 26 disclosures without disclosing its affiliate. *Id.* at ⋆6–9. Those actions, the Court said, evidenced an intent to litigate rather than arbitrate and were inconsistent with the right Experian later sought to invoke. *Id.*

This appeal follows.

## II. Standard of Review

We review de novo the District Court's denial of Experian's motion to compel arbitration. *See Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017).

## III. Discussion

### A. Existence of an Agreement

The FAA requires courts to enforce arbitration agreements according to their terms. 9 U.S.C. §§ 2, 4. But arbitration is a matter

of contract, and the FAA does not allow a court to compel arbitration unless it is satisfied that the parties agreed to arbitrate. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147–49, 144 S. Ct. 1186, 1192–93 (2024). "Before referring a dispute to an arbitrator, therefore, the court determines whether a valid arbitration agreement exists." *Id.* at 149, 144 S. Ct. at 1193 (alterations adopted) (citation and internal quotation marks omitted).

Once a party moves to compel arbitration, 9 U.S.C. § 4 provides the governing procedure. If the existence of the agreement is not genuinely disputed, the court must compel arbitration. 9 U.S.C. § 4. But if the opposing party raises a genuine dispute of material fact as to contract formation, the court must hold a summary trial. *Id.*; *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). In short, the § 4 framework mirrors summary judgment. *Bazemore*, 827 F.3d at 1333; *see also* Fed. R. Civ. P. 56(a).

These principles apply equally to so-called "clickwrap" agreements, in which users assent to terms by clicking a button near a disclosure referencing those terms. *See Bazemore*, 827 F.3d at 1327, 1333. Whether a clickwrap agreement forms a valid contract depends on state contract law. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995).

Under Florida law, the central question is whether the parties mutually assented to be bound. *See, e.g.*, *Dye v. Tamko Bldg. Prods., Inc.*, 908 F.3d 675, 680–81 (11th Cir. 2018). In the clickwrap context, that inquiry turns on whether the relevant terms were reasonably presented and whether the user took clear, affirmative

steps to accept them. *See MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. Dist. Ct. App. 2018) (per curiam). The party asserting the agreement must prove its existence by a preponderance of the evidence. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). "[A] preponderance of the evidence is defined as the greater weight of evidence . . . or evidence that more likely than not tends to prove a certain proposition." *S. Fla. Water Mgmt. Dist. v. RLI Live Oak, LLC*, 139 So. 3d 869, 872 (Fla. 2014) (citations and internal quotation marks omitted).

## B. Application

Lamonaco argues that Experian failed to prove the existence of an arbitration agreement. She, like the District Court, relies heavily on *Bazemore v. Jefferson Capital Systems, LLC*. But *Bazemore* turned on a failure of proof that is not present here.

In *Bazemore*, a cardholder sued her credit card provider, JCS, for violating the Fair Debt Collection Practices Act. 827 F.3d at 1327. JCS moved to compel arbitration under a clickwrap agreement the plaintiff had purportedly accepted when applying for the card online. *Id.* But JCS submitted no evidence of what the plaintiff saw during that process. *Id.* at 1327–28. We explained that there was

> no evidence that the Internet web page or pages that [the plaintiff] viewed, or upon which she applied for her [credit card], displayed or referred to any terms or conditions of the credit card she sought, much less that she was required to consent to any such terms in order to obtain her credit card.

*Id.* JCS submitted a declaration from its employee who summarily asserted that the plaintiff had accepted the terms. *Id.* He did not describe the application process, assert that the contract attached to his declaration was the same one which would have been sent to the plaintiff, or provide other supporting documentation. *Id.*

JCS's declarant also claimed that a standard cardholder agreement "would have been sent" to the plaintiff via mail. *Id.* at 1328. That agreement allegedly included an arbitration clause and bound the cardholder upon first use of the card. *Id.* But JCS never proved it mailed the agreement to the plaintiff, nor did JCS have a copy of the specific agreement it allegedly sent. *Id.* at 1331–32. Applying Georgia law, we held that JCS's showing was "woefully inadequate." *Id.* at 1330. Indeed, the evidentiary record was so lacking that we concluded there was not even enough to justify a trial. *Id.* at 1333–34.

That evidentiary record differs from the showing Experian made here. Williams attested that Lamonaco enrolled in the CreditCheck Total service on February 16, 2020, and described the online enrollment process in detail. He asserted that he had personal knowledge based on internal business records that he reviewed. He attached the Terms of Use that Lamonaco agreed to, and he included screenshots depicting the pages Lamonaco encountered during enrollment.

Lamonaco does not contest these facts. She does not deny enrolling, does not dispute the interface's description, and does not claim that the terms were concealed or misleading. Her objection

is purely legal: that the declaration—unrebutted, signed under penalty of perjury, based on personal knowledge, and supported by documentation—is insufficient to establish an agreement by a preponderance of the evidence.

We disagree. A declaration that sets forth specific facts based on personal knowledge, describes the enrollment process, and appends the operative contract is competent evidence sufficient to satisfy Experian's initial burden. *Cf.* 28 U.S.C. § 1746 (permitting unsworn declarations to substitute for affidavits if made under penalty of perjury). Williams's declaration and supporting exhibits made it "more likely than not" that Lamonaco agreed to the Terms of Use. *See S. Fla. Water Mgmt. Dist.*, 139 So. 3d at 872. And where, as here, the opposing party offers no factual rebuttal, the FAA and Florida contract law require no more to compel arbitration.

Nor is Lamonaco's attempt to discount the declaration under the best evidence rule persuasive. *See* Fed. R. Evid. 1002 ("An original writing . . . is required in order to prove its content . . . ."). That rule applies only when a party seeks to prove what a document says—not when it seeks to prove that something happened. *See id.*; *Allstate Ins. v. Swann*, 27 F.3d 1539, 1542–43 (11th Cir. 1994). Williams's declaration goes to whether Lamonaco enrolled, not to the precise wording of the Terms of Use, which is already in the record.

Because Experian submitted competent and unrebutted evidence of an agreement to arbitrate, the District Court erred in denying its motion to compel arbitration.

*C. Delegation of Waiver*

As an alternative holding, the District Court held that Experian waived its right to arbitration by participating in litigation. But that was not the Court's decision to make.

"[A]rbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772, 2776 (2010). The FAA implements that principle by requiring courts to enforce arbitration agreements as written. *See id.* When a contract delegates threshold questions to the arbitrator, courts must honor that delegation. *Id.* at 68–72, 130 S. Ct. at 2777–79.

The agreement here did just that. It contained a delegation clause assigning to the arbitrator all disputes over the interpretation, applicability, or enforceability of the arbitration agreement. The amended terms made that delegation unmistakable: "All issues are for the arbitrator to decide including . . . whether you or [Experian], through litigation conduct or otherwise, waived the right to arbitrate." Lamonaco does not dispute the clause's validity. She expressly conceded that she did not contest the scope of the alleged arbitration agreement.

Still, Lamonaco invokes *Grigsby & Associates. v. M Sec. Inv.*, 664 F.3d 1350 (11th Cir. 2011) (per curiam), for the proposition that courts must always decide waiver. That argument misreads *Grigsby*.

*Grigsby* holds that waiver is *presumptively* a question for the courts. 664 F.3d at 1353 ("[W]e conclude that it is *presumptively* for the courts to adjudicate disputes about whether a party . . . has

waived the right to arbitrate." (emphasis added)). That rule is merely a default. *See id. Grigsby* does not address what happens when the parties agree to delegate waiver issues to the arbitrator. And we have made clear that parties can overcome the default by agreeing to arbitrate threshold arbitrability issues. *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332–33 (11th Cir. 2005).

The Supreme Court has likewise made clear that these delegation agreements must be enforced. In *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 139 S. Ct. 524 (2019), the Court held that when a delegation clause is "clear and unmistakable," courts must respect it—even if they would otherwise view the issue as one for judicial resolution. 586 U.S. at 67–69, 139 S. Ct. at 529–30. *Coinbase, Inc. v. Suski*, reaffirmed the point: if a contract contains an arbitration clause with a delegation provision, then, "absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration." 602 U.S. at 152, 144 S. Ct. at 1194.

That rule governs here. Lamanco and Experian "clearly and unmistakably agreed to arbitrate [waiver]." *See Attix*, 35 F.4th at 1298. The District Court was obligated to honor that delegation. Its failure to do so was error.

## IV. Conclusion

The FAA requires courts to enforce arbitration agreements according to their terms. When parties delegate threshold issues to the arbitrator, courts must honor that delegation.

Experian submitted competent, unrebutted evidence that Lamonaco agreed to its Terms of Use. That submission satisfied Experian's initial burden to prove the existence of an agreement by a preponderance of the evidence. Lamonaco offered nothing in rebuttal—no competing facts, no contrary documentation, no genuine dispute.

The District Court erred in deciding that Experian did not meet its burden and in resolving the waiver issue itself. We reverse and remand with instructions to grant Experian's motion to compel arbitration.

**REVERSED AND REMANDED.**

# Appendix A

## Create Your Account

### Identity Verification

**Social Security Number**

[ __ - __ - ____ ]    Why do we need this?

☐ Display

**Date of Birth**

[ Month ▾ ] [ Day ▾ ] [ Year ▾ ]

### Account Information

**Username**

[_____]

**Password**                          **Confirm Password**

[_____]                       [_____]

### Credit/Debit Card Information

Your card will be immediately charged a non-refundable $1 fee, plus any applicable sales tax for your credit report.

**Credit Card Number**                **Security Code**

[_____]                       [_____]    What is this?

**Expiration Date**

[ - Month - ▾ ]    [ - Year - ▾ ]

Credit score is calculated based on FICO® Score 8 model, unless otherwise noted. In addition to the FICO® Score 8, we may offer and provide other base or industry-specific FICO® Scores (such as FICO® Auto Scores and FICO® Bankcard Scores). Your lender or insurer may use a different FICO® Score than FICO® Score 8 or such other base or industry-specific FICO® Score (if available), or another type of credit score altogether. Learn more.

°Identity Theft Insurance underwritten by insurance company subsidiaries or affiliates of American International Group, Inc. The description herein is a summary and intended for informational purposes only and does not include all terms, conditions and exclusions of the policies described. Please refer to the actual policies for terms, conditions, and exclusions of coverage. Coverage may not be available in all jurisdictions. Review the Summary of Benefits.

**PAYMENT INFORMATION**

When you order your $1 Credit Report and FICO® Score here, you will begin your 7-day trial membership in Experian CreditCheck® Total. **You may cancel your trial membership at any time within 7 days without charge.** If you decide not to cancel, your membership will continue and you will be billed for just $29.99 for each month that you continue your membership. You may cancel your membership and stop the monthly billing by contacting us at any time. However, you will not be eligible for a pro-rated refund of your current month's paid membership fee.

By clicking "Submit Secure Order": I accept and agree to your **Terms of Use Agreement**, as well as acknowledge receipt of your **Privacy Policy** and **Ad Targeting Policy**. I authorize Consumerinfo.com, Inc., also referred to as Experian Consumer Services ("ECS"), to obtain my credit report and/or credit score(s), on a recurring basis to provide them to me for review while I have an account with ECS. I also authorize ECS to obtain and use the information I provide, and my credit report and/or credit score(s), on a recurring basis to notify me of credit opportunities and other products and services that may be available to me through ECS or through unaffiliated third parties. I understand that I may withdraw this authorization at any time by contacting ECS.

**Submit Secure Order**

## Your Order Summary

| Experian CreditCheck® Total | $1.00 |
|---|---|
| ✔ Monthly 3-Bureau FICO® Scores | |
| ✔ 3-Bureau Credit Monitoring and Alerts | |
| ✔ Daily FICO® Scores Based on Experian Data | |
| ✔ Experian CreditLock with Alerts | |
| ✔ FICO® Score Tracker | |
| ✔ Identity Protection and Alerts | |
| ✔ Up to $1 Million Identity Theft Insurance ° | |
| ✔ Dedicated Fraud Resolution Support | |
| ✔ Lost Wallet Assistance | |
| ✔ Child Identity Protection | |
| Sales Tax | $0.00 |
| **Order Total** | **$1.00** |

**Privacy Policy Notice**

ConsumerInfo.com, Inc.'s policy on how your personal information is used and disclosed is contained in our Privacy Policy and Ad Targeting Policy. This product is Web-based and you agree to accept this notification, revisions, and the provision of an annual notice electronically through this website, if required.